No. 04-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 50

TRAVELERS CASUALTY AND SURETY
COMPANY, a foreign corporation,

        Plaintiff, Respondent and Cross-Appellant,

    v.

RIBI IMMUNOCHEM RESEARCH, INC.,
a Delaware corporation,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DV 99-218,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Daniel Hoven, Browning, Kaleczyc, Berry and Hoven, P.C., Helena, MT
Michael R. Wrenn, Daniel A. Zariski, Samuel R. Watkins, Heller Ehrman
White & McAuliffe, LLP, Seattle, WA

    For Respondent:

        Ronald A. Bender, Worden Thane, P.C., Missoula, MT
Thomas S. James, Jr., Jessica L. Goldman, Summit Law Group, PLLC,
Seattle, WA

    For Amicus Montana Petroleum Tank Release Compensation Board:

        R. Allan Payne, Special Assistant Attorney General, Doney, Crowley,
Bloomquist & Uda, P.C., Helena, MT

    For Amicus Complex Insurance Claims Litigation Association:

        Julie A. Johnson, Teri A. Walter, Gough, Shanahan, Johnson and Waterman,
Helena, MT

Submitted on Briefs: January 11, 2005
Decided: March 1, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 We must determine whether a comprehensive general liability (CGL) policy provides coverage for environmental damage caused by the intentional disposal of hazardous wastes into a landfill that results in the unintentional migration of the wastes into the groundwater. The Twenty-First Judicial District Court, Ravalli County, found that the policy's pollution exclusion bars coverage for the environmental contamination due to the intentional nature of the dumping. We affirm the District Court's decision to deny coverage to Ribi Immunochen Research, Inc. (Ribi) under a CGL policy provided by Travelers Casualty and Surety Company (Travelers).

¶2 The parties raise numerous arguments on appeal and cross-appeal, but we need address only the following issues to resolve this matter:

¶3 1. Whether the District Court erred in determining that the CGL policy's pollution exclusion provision bars coverage for Ribi's hazardous waste disposal in that the disposal was not "sudden or accidental."

¶4 2. Whether the District Court erred in determining Travelers had no duty to defend Ribi against claims brought by third-parties for cleanup costs.

¶5 3. Whether the District Court erred in determining that Travelers may recoup its defense costs expended on Ribi's behalf for those claims that the District Court ultimately determined were barred by the CGL policy's pollution exclusion.

¶6 4. Whether the District Court erred in ordering Travelers to pay attorneys' fees that Ribi incurred in litigating pre-trial discovery motions.

¶7 Ribi also appeals the District Court's dismissal of its contract-based claims against

2

Travelers, including breach of the duty of good faith and fair dealing and violations of the Unfair Claims Settlement Practices Act. We need not reach these issues, however, as our decision to affirm the District Court's conclusions denying coverage for Ribi's environmental contamination makes review of these matters unnecessary. *See Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767 (holding that breach of good faith and fair dealing claim requires showing of breach of contract); *see also* § 33-18-242(5), MCA (an insurer may not be held liable under the Unfair Claims Settlement Practices Act if the insurer had a reasonable basis in law or in fact for contesting the claim). Similarly, we resolve Travelers's narrow cross-appeal question regarding which party bears the burden of proving an "occurrence" within the context of our analysis of the broader burden of proof discussion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Ribi, a corporation located in Hamilton, Montana, at all times pertinent to these proceedings, develops biopharmaceutical products. From 1981 to 1985, Ribi used toxic solvents to extract and purify its products. Ribi routinely disposed of its hazardous wastes at Bitterroot Valley Sanitary Landfill (BVSL) for most of this period. Ribi employees transported containers of waste to BVSL each month and poured the liquid contaminants into an open, unlined, earthen pit that measured six feet deep, four feet wide, and eight feet long. Ribi recognized the hazardous nature of its chemical solvents, but hoped that much of the waste would evaporate before migrating through the landfill into the shallow groundwater. Subsequent analysis revealed, however, that the hazardous contaminants migrated into the groundwater approximately 13 to 34 minutes after each disposal.

¶9 The Environmental Protection Agency (EPA) discovered groundwater and soil

3

contamination in 1987 resulting from Ribi's waste disposal at BVSL. The National Institute of Health (NIH) later excavated and cleaned the contaminated soil and groundwater. Neighboring property owners sued Ribi in 1993 for personal injury and property damages. The State also sued Ribi in 1997 to recover its response costs arising from contamination in and around the landfill. The next year, 1998, the United States sought contribution from Ribi for NIH's response costs. Ribi eventually settled the claims with all three parties. This litigation arises from the relationship between Ribi and its insurer–Travelers–regarding Ribi's requests for insurance coverage and defense against those three claims.

¶10     Travelers issued the CGL policy to Ribi from 1982 through 1985. Ribi filed a claim with Travelers to recover the cost of remediating the damages caused by the contamination. In response, on December 6, 1993, Travelers executed a reservation of rights letter for the neighboring property owners' claims in which it informed Ribi that it owed no indemnity obligation to Ribi and therefore no defense. Travelers also sent Ribi a separate letter on February 10, 1994, regarding its intention to seek reimbursement for defense costs. Travelers and Ribi eventually agreed that Travelers would pay fifty percent of Ribi's defense costs in its suit with the neighboring property owners.

¶11     Travelers executed additional reservation of rights letters on January 25, 1996, and March 10, 1999, in response to Ribi's further demand for defense and indemnity of claims brought by the state and federal governments. Travelers again informed Ribi that it owed no indemnity obligations and therefore no defense and also notified Ribi of its intention to seek recoupment of any defense costs in the two government actions. Ribi raised no objections and thereafter, Travelers defended Ribi under its reservation of rights, paying one-

4

hundred percent of the defense costs in the government suits.

¶12 Ribi regularly submitted claims to Travelers for defense costs and indemnification under the policies throughout these third-party lawsuits. Travelers denied Ribi's claims and finally brought an action seeking a declaration that it had no duty to provide insurance coverage and defense for these environmental claims. Ribi counterclaimed against Travelers for breach of contract, declaratory relief, breach of the covenant of good faith and fair dealing and violations of the Unfair Claims Settlement Practices Act under § 33-18-201, MCA.

¶13 Travelers filed a motion for summary judgment on December 12, 2001, on the declaratory judgment issue and also sought to recoup expenses incurred as part of its defense against the third-party suits. Travelers also refuted Ribi's counterclaim that it had breached the duty of good faith and fair dealing or violated the Unfair Claims Settlement Practices Act in denying Ribi's claims. The District Court granted summary judgment to Travelers on the coverage issue thereby negating all of Ribi's contract-based claims. The court further allowed Travelers to recoup its defense costs in the government suits expended after March 10, 1999. With respect to the neighboring property owners' suits, the District Court initially denied Travelers's recoupment claims, but later amended its order to include those costs expended after February 10, 1994. This appeal followed.

**STANDARD OF REVIEW**

¶14 We review a district court's decision to grant summary judgment *de novo*, based on the same criteria applied by the district court. *Counterpoint, Inc. v. Essex Ins. Co.,* 1998 MT 251, ¶ 7, 291 Mont. 189, ¶ 7, 967 P.2d 393, ¶ 7. As the material facts here remain

5

uncontroverted, we limit our review to questions of law. *Brabeck v. Employers Mut. Cas. Co.*, 2000 MT 373, ¶ 8, 303 Mont. 468, ¶ 8, 16 P.3d 355, ¶ 8. The District Court interpreted Travelers's insurance contract in reaching its decision and this interpretation of an insurance contract represents a question of law. *Pablo v. Moore*, 2000 MT 48, ¶ 12, 298 Mont. 393, ¶ 12, 995 P.2d 460, ¶ 12. We review a district court's conclusion of law to determine whether it is correct. *Pablo*, ¶ 12.

## DISCUSSION

¶15 **Whether the District Court erred in determining that the CGL policy's pollution exclusion provision bars coverage for Ribi's hazardous waste disposal in that the disposal was not "sudden or accidental."**

¶16 The District Court determined that Ribi's disposal constituted an "occurrence," possibly triggering coverage under the CGL policy, but it found no coverage based upon the fact that Ribi's long-term disposal of hazardous wastes could not be deemed "sudden and accidental" as defined in the CGL policy's pollution exclusion. Ribi argues that the District Court erred in determining that the "sudden and accidental" exception contains a temporal element and instead contends that the term "sudden" should be understood to mean unexpected, and not necessarily quick or abrupt. Ribi maintains, in other words, that even though its disposal may have occurred over a period of years, the CGL policy should provide coverage so long as the ultimate migration of the wastes into the groundwater was unexpected and accidental. Thus, Ribi alleges that the ultimate migration of its waste into the groundwater constituted the relevant event under the CGL policy's pollution exclusion rather than its intentional disposal in the landfill.

6

¶17     General rules of contract law apply to insurance policies and we construe them strictly against the insurer and in favor of the insured. *Erickson v. Dairyland Ins. Co.* (1990), 241 Mont. 119, 123, 785 P.2d 705, 707-08. Courts give the terms and words used in an insurance contract their usual meaning and construe them using common sense. *Hardy v. Progressive Speciality Ins. Co.*, 2003 MT 85, ¶ 14, 315 Mont. 107, ¶ 14, 67 P.3d 892, ¶ 14. Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage. *Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 25, 289 Mont. 312, ¶ 25, 961 P.2d 114, ¶ 25. An ambiguity exists where the contract, when taken as a whole, reasonably is subject to two different interpretations. *Holeman*, ¶ 25. Courts should not, however, "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Johnson v. Equitable Fire & Marine Ins. Co.* (1963), 142 Mont. 128, 131, 381 P.2d 778, 779.

        *A. Definition of "Occurrence"*

¶18     At the outset we must determine whether the unintentional damage caused by Ribi's intentional disposal constitutes an "occurrence" as defined in the CGL policy. The CGL policy's intent is "to insure the acts or omissions of the insured, including his intentional acts, excluding only those in which the resulting *injury* is either expected or intended from *the insured's standpoint*." *Northwestern Nat. Cas. Co. v. Phalen* (1979), 182 Mont. 448, 455, 597 P.2d 720, 724 (emphasis added). Whether the resulting injuries were intended or expected must be measured from the insured's standpoint. *Phalen*, 182 Mont. at 455, 597 P.2d at 724.

¶19 As defined in the CGL policy, an "occurrence" constitutes an accident that results in property damage "neither expected nor intended from the standpoint of the insured." Travelers maintains in its cross-appeal that the District Court erred in determining that the "neither expected nor intended" language in the CGL policy represents an exclusion to coverage. As an exclusion, the District Court found that Travelers bears the burden of proving that it applies. Travelers argues, instead, that the District Court should have concluded that the "expected nor intended" language provides a grant of coverage and that Ribi, as the insured seeking coverage, must prove that the damages arising from its disposal of hazardous wastes were "neither expected nor intended." We agree.

¶20 The definition of "occurrence" clearly constitutes an inseparable element of the CGL policy's insuring agreement, specifying a number of factors that must be present for coverage to exist. Under the CGL policy's definition of "occurrence," Ribi could establish coverage only if the property damage arising from its disposal of hazardous wastes had occurred unexpectedly or unintentionally. To interpret the "neither expected nor intended" language otherwise would force the insurer to provide coverage unconditionally for any claims and under any circumstances until it could discover independently evidence of damages caused by the insured. *Fireman's Fund Ins. Co. v. Ex-Cell-O Corp.* (E.D. Mich. 1988), 702 F. Supp. 1317, 1328. Thus, on the face of the CGL policy, and under the rule discussed below (¶ 29, infra) that the insured initially must prove a loss stemming from an "occurrence" of the type included in the general coverage provision, the burden would be upon Ribi to prove that its claim arose from facts that came within the CGL policy's definition of "occurrence." We conclude, therefore, that the District Court improperly

8

determined that the "neither expected nor intended" language in the CGL policy constitutes an exclusion. This conclusion alone, however, does not bar coverage for Ribi; it merely imposes on it the burden of establishing an "occurrence."

¶21 The CGL policy's core provision defines "occurrence" by reference to those accidents or conditions that result in damage that was "neither expected nor intended." This provision contains no temporal component and focuses instead on the insured's expectations regarding damages. Thus, acts that take place over a significant period of time, but cause unexpected damage fall within the definition of an "occurrence" and are entitled to coverage. *Millers Mut. Ins. Co. v. Strainer* (1983), 204 Mont. 162, 663 P.2d 338 *overruled on other grounds* (holding that intentional acts do not exclude coverage under the "occurrence" language unless the injury was expected or intended).

¶22 Here the District Court found that Ribi clearly intended to dispose hazardous wastes at BVSL for an extended period of time. The court found, however, that the parties disputed whether Ribi intended or expected damage from this intentional discharge. Given this disagreement and the fact that the resulting damages must be viewed from the insured's standpoint, we will assume for our purposes that an "occurrence" took place and coverage existed. *Phalen*, 182 Mont. at 455, 597 P.2d at 724. This assumption transforms our inquiry into whether the pollution exclusion clause in the CGL policy eliminates coverage for damages arising out of the intentional disposal of hazardous wastes into or upon the land.

*B. Pollution Exclusion and its "Sudden and Accidental" Exception*

¶23 A separate pollution exclusion in the CGL policy restricts the otherwise broad sweep of "occurrence." It provides that the policy does not apply to property damages arising out

of the disposal of hazardous wastes into or upon the land. The pollution exclusion clause's general thrust disavows any obligations by Travelers to provide coverage in cases such as this where Ribi's disposal of hazardous wastes caused the damages. The pollution exclusion would proscribe Travelers's coverage if we stopped here because Ribi's hazardous wastes undoubtedly contaminated neighboring soil and groundwater.

¶24    In this case, however, the CGL policy's pollution exclusion contains an important exception. This exception states that the exclusion does not apply if the disposal is "sudden and accidental." In other words, the pollution exclusion eliminates claims from coverage unless the claim arises from the disposal of hazardous wastes deemed to be "sudden and accidental." Travelers contends that "sudden" includes a temporal element within the CGL policy's context that must be applied to Ribi's disposal of hazardous wastes.

¶25    In *Sokolowski v. American West Ins. Co.,* 1999 MT 93, 294 Mont. 210, 980 P.2d 1043, we discussed the meaning of a similar "sudden and accidental" provision in a homeowner's policy. There we concluded that the gradual accumulation of soot and smoke on the walls, ceiling and floor of the insured's home caused by prolonged burning of candles during the holiday season did not constitute a "sudden" release of pollutants. *Sokolowski,* ¶ 17. We focused on the fact that the unambiguous language of the "sudden and accidental" exception in a pollution exclusion clause in a homeowner's policy contains a temporal element. *Sokolowski,* ¶ 15. We noted that the very use of the two words "sudden" and "accidental" reveals a clear intent to define them to state two separate requirements. *Sokolowski,* ¶ 15. In other words, the word "sudden," even if it includes the concept of unexpectedness, also encompasses a temporal element, because the word "accidental"

10

already expresses "unexpectedness." *Sokolowski*, ¶ 15.

¶26 Thus, we concluded that in order for the word "sudden" to have significant purpose, and not to be surplusage when used generally in conjunction with the word "accidental," it must have a temporal aspect to its meaning, and not merely a sense of something unexpected. *Sokolowski*, ¶ 15. Further, recognizing our duty to interpret the contract as a whole, the failure to show one condition, i.e., suddenness, negates the exception to the pollution exclusion resulting in no coverage under the insurance policy. *Sokolowski*, ¶ 15 (citing § 28-3-202, MCA). We now extend *Sokolowski's* holding to the standard pollution exclusion in a CGL policy.

¶27 Ribi suggests that we should consider the drafting history of the "sudden and accidental" pollution exclusion to determine its meaning. Extrinsic evidence may be used as an aid in interpreting contract provisions, however, only when the language contained therein is ambiguous. Section 28-2-905, MCA. We have declared identical policy language in *Sokolowski* to be unambiguous, and, therefore, we deem it unnecessary to consider Ribi's arguments pertaining to the drafting history of the CGL policy's pollution exclusion clause. *Sokolowski,* ¶ 15.

C. *Burden of Proof*

¶28 Now that we have determined that the "sudden and accidental" exception to the pollution exclusion contains a temporal element, we must address an issue of first impression: which party bears the burden of proving that an exception to an exclusion applies, such as the "sudden and accidental" exception at issue here. We agree with Travelers that the insured bears the burden of proof.

11

¶29 Courts generally allocate the respective burdens of proof to the insured and insurer consistent with the basic distinction between coverage clauses and exclusionary clauses. The insured must prove in the first place a loss stemming from an "occurrence" of the type included in the general coverage provision. *See, e.g.*, *MacKinnion v. Truck Ins. Exchange* (Cal. 2003), 73 P.3d 1205, 1213. In turn, the insurer has the burden of proving the applicability of an exclusionary clause, such as the pollution exclusion. *See, e.g., United States Fidelity & Guaranty* (D. Kan. 1990), 734 F. Supp. 437, 442; *Keggi v. Northbrook Property and Cas. Ins. Co.* (Ariz. 2000), 13 P.3d 785, 788. We agree with those courts that have allocated the initial burden to the insured to establish that the claim falls within the basic scope of coverage and shifted to the insurer the burden to establish that the claim specifically is excluded.

¶30 We now turn to the third and final step in the process. Although courts remain split on the issue, the majority return the burden of proving an exception to an exclusion to the insured. For example, in *St. Paul Fire & Marine Ins. v. Warwick Dyeing Corp.* (1st Cir. 1994), 26 F.3d 1195, 1200, the court held that the insured who disposed of various waste materials at a landfill bore the burden of proving that an exception to the pollution exclusion applied. Likewise the court in *Fireman's Fund*, 702 F. Supp. at 1328, determined that the insured carries the burden of proving the exception to the pollution exclusion because the insured possess the information pertaining to its activities. This allocation appropriately aligns the burden with the benefit as the party seeking the benefit of a particular policy provision bears the burden of proving its application. *See Intel Corp. v. Hartford Accident & Indem. Co.* (9th Cir. 1991), 952 F.2d 1551, 1557.

¶31 The CGL policy's "sudden and accidental" exception creates coverage for environmental contamination where it otherwise would not exist. Correspondingly, the insured bears the burden of proving that the coverage stems from this exception: "[W]hen a policy contains an exception within an exception, the insurer need not negative the internal exception; rather, the [insured] must show that the exception from the exemption from liability applies." 19 G. Couch, *Couch on Insurance 2d* § 79.385, 338 (1983). Further, if the burden were on the insurer to disprove the exception, the insured would have no incentive to discover whether its disposed wastes gradually were migrating into neighboring groundwater, because "preservation of ignorance would increase the likelihood of insurance coverage." *Aeroquip Corp. v. Aetna Cas. and Sur. Co., Inc.* (9th Cir. 1994), 26 F.3d 893, 895.

¶32 The District Court relied on *Travelers Cas. & Sur. Co. v. The Superior Court of Santa Clara* (Cal. 1998), 75 Cal. Rptr.2d 54, for the proposition that the insurer has the burden of making an affirmative showing in a summary judgment motion that the insured cannot establish that the claims fall within the "sudden and accidental" exception to the pollution exclusion. *Travelers* is not persuasive here. Forcing the insurer to prove a negative–that the discharge was not all sudden and accidental–seems unfair where the insured solely possesses the relevant information pertaining to its activities. *Fireman's Fund*, 702 F. Supp. at 1328. By contrast, it would impose an undue burden on the insurer to require it to discover independently evidence of an insured's sudden and accidental disposal of pollutants. We conclude that Ribi had the burden of proving that its disposal of hazardous wastes into the groundwater of neighboring property owners was "sudden and accidental."

*D. Relevant Event Under the "Sudden and Accidental" Exception*

¶33    Next, we must consider whether the "sudden and accidental" exception of the CGL policy's pollution exclusion focuses on Ribi's initial disposal of the hazardous wastes or on the subsequent migration of these wastes away from the disposal site and the corresponding damage. Ribi maintains that the ultimate migration of its wastes into the groundwater constitutes the relevant event under the CGL policy's pollution exclusion rather than its intentional disposal of them into the landfill.

¶34    Other courts have taken the opposite approach. For instance, the court in *LaFarge Corp. v. Travelers Indem. Co.* (11th Cir. 1997), 118 F.3d 1511, held that under Florida law, it is actual discharge, not resulting damages or contamination, that must be "sudden and accidental" in order to fall within the exception to the pollution exclusion clause in comprehensive general liability policies. As discussed previously, basic coverage under the CGL policy arises from the occurrence of unintended damages. *See* ¶ 22. And the CGL policy generally excludes from basic coverage those damages that arise from the disposal of hazardous wastes. *See* ¶ 23. An important exception to the pollution exclusion exists, however, for those discharges that are "sudden and accidental."

¶35    We determine that the language of the CGL policy's pollution exclusion clearly excludes coverage for "property damage arising out of the *discharge*" of hazardous wastes "into or upon the land" unless "such *discharge* . . . is sudden and accidental." (Emphasis added). The occurrence that must be sudden and accidental then, is the disposal of hazardous wastes "into or upon the land" from which the property damage arose, not the unexpected migration and corresponding damages. *See, e.g.*, *Warwick,* 26 F.3d at 1203

14

(under Rhode Island law, initial disposal of waste at landfill site was relevant discharge that had to be sudden and accidental for coverage to exist under exception to pollution exclusion clause in general liability policy; release of pollutants from landfill into surrounding environment was not relevant discharge); *Transamerica Ins. Co. v. Duro Bag Mfg. Co.* (6th Cir. 1995), 50 F.3d 370, 373 (holding under Kentucky law that coverage barred insured's depositing of drums and fiberboard barrels containing ink and glue at landfill, when the disposal took place on regular basis or in ordinary course of business).

¶36     To hold otherwise eliminates the distinction between unintentional and unexpected *disposal* and unintentional and unexpected migration and corresponding *damages*. The court in *Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha* (Wash. 1994), 882 P.2d 703, blurred this distinction when it held that "if the damage results from the dispersal of materials into the groundwater from a place of containment where the insured believed they would remain or from which they would be safely filtered, and that dispersal was unexpected or unintended, then coverage is provided under the policies." *Queen City Farms*, 882 P.2d at 725. We determine instead, that whether the insured intended the hazardous wastes to migrate into the groundwater and cause damage after the intentional disposal into the land proves irrelevant. The disposal must be sudden and accidental to qualify for coverage, not the migration and corresponding damage. Even were we to apply the "sudden and accidental" exception to the ultimate migration of the wastes, in contradiction to our holding today, the migration was not abrupt or quick, only unintentional. We conclude, therefore, that the initial disposal, rather than the migration and any resulting damages, must be "sudden and accidental" in order to fall within the exception to the CGL policy's pollution

15

exclusion clause.

¶37 Here Ribi intentionally disposed of hazardous wastes at the BVSL site over a three-year period. If, as we have held, the term "sudden" constitutes both an "abrupt" and a "quick" discharge, then without question disposing contaminants into or upon the land for a period of three years cannot be construed as "sudden." Indeed, Ribi's employees transported containers of waste to BVSL each month and poured the liquid contaminants into an open, unlined, earthen pit that measured six feet deep, four feet wide, and eight feet long. Ribi's intentional disposal of hazardous wastes represents the relevant event and not the later migration of hazardous wastes from the landfill into the groundwater and neighboring property. Ribi's disposal of hazardous wastes into BVSL cannot be construed either as accidental or unexpected, and, therefore, the District Court correctly concluded that the CGL policy's pollution exclusion barred coverage.

¶38 **Whether the District Court erred in determining Travelers had no duty to defend Ribi against claims brought by third-parties for cleanup costs.**

¶39 Ribi argues Travelers owed it a duty to defend against the third-party suits that alleged liability potentially covered by the CGL policy. Moreover, Ribi contends that Travelers's declaratory judgment action forced the District Court to consider two issues of first impression and such legal uncertainty on its own gives rise to a duty to defend.

¶40 We apply the "four-corners" rule as the policy's language determines an insurer's duty to defend its insured. *City of Bozeman v. AIU Insurance Co.* (1993), 262 Mont. 370, 377, 865 P.2d 268, 272 ("a liability insurer has no duty to defend an action against its insured when the claim or complaint clearly falls outside the scope of the policy's

16

coverage"). The acts giving rise to the claim form the basis for coverage, not any legal theories contained in the underlying complaint. *See New Hampshire Ins. Group v. Strecker* (1990), 244 Mont. 478, 481, 798 P.2d 130, 132 (holding that coverage could not be premised upon theories of negligence in the underlying complaint where based upon numerous acts of molestation that could not be deemed negligent acts). Simply put, if the asserted claim is not covered by the policy, then the insurer has no duty to defend the insured. *Insured Titles, Inc. v. McDonald* (1996), 275 Mont. 111, 116, 911 P.2d 209, 211.

¶41 The acts giving rise to the claims against Ribi are not in dispute. The third-party suits alleged that Ribi intentionally disposed of hazardous wastes at BVSL. Thus, Travelers did not need to resolve any factual disputes in analyzing its duty to defend. These circumstances differ, therefore, from those in *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 24, 321 Mont. 99, ¶ 24, 90 P.3d 381, ¶ 24, where we held that an insurer could not look to facts developed outside the policy language and the pleadings in analyzing its duty to defend.

¶42 As discussed previously, intentional disposal cannot be considered "accidental" under the exception to the CGL's pollution exclusion. *See* ¶ 26; *see also Sokolowski*, ¶ 15. Further, Ribi's continued disposal over several years cannot be construed as "sudden" under the pollution exclusion. *See* ¶ 26; *see also Sokolowski*, ¶ 15. The CGL policy bars coverage for the asserted claims because Ribi's intentional and repeated acts gave rise to the third-party suits. Accordingly, as no coverage existed, Travelers had no duty to defend Ribi. *Insured Titles, Inc.,* 275 Mont. at 116, 911 P.2d at 211.

¶43 Ribi contends nevertheless that certain of Travelers's defenses present issues of first impression in Montana thereby forcing Travelers to provide a defense. We disagree.

17

¶44    The Alaska Supreme Court has concluded that the lack of court review of specific policy language proves insufficient on its own to create a possibility of coverage that requires a defense. *Makarka v. Great American Ins. Co.*, (Alaska 2000), 14 P.3d 964, 970. In *Makarka*, the insured sustained injuries in a collision arising from an earlier negligent brake repair.  Although the insured had cancelled her coverage before the accident, she argued it remained in effect due to the fact that the faulty brake repair work took place during the policy period.  The insured based her claims on language in the policy that allowed for recovery on injuries "to which this insurance applies."  The insurer denied coverage based on the fact that the occurrence date of her injuries fell outside of coverage. The Alaska Supreme Court held insurers who accurately interpret their policies and give the insured timely notice of refusal need not provide a defense merely because a court has yet to interpret that particular policy language. *See Makarka*, 14 P.3d at 970.

¶45    We similarly conclude the District Court properly determined that Travelers had no duty to defend Ribi against claims brought by third-parties for cleanup costs.  Travelers responded to Ribi's demand for defense and indemnity with three different reservation of rights letters.  Travelers denied coverage in each, stating its investigation and participation in the defense under the policies took place under a continuing reservation of rights to decline coverage at a later time.  Travelers eventually denied the claims when its investigation revealed Ribi intentionally had disposed of the hazardous wastes.  Travelers's denial letters assessed Ribi's claim for injury and accurately explained that the injury occurred outside of the CGL policy's scope.  Thus, the District Court correctly rejected Ribi's claim that the novelty of Travelers's defense on its own triggered a duty to provide

18

a defense to the third-party suits. *Makarka*, 14 P.3d at 970.

¶46 **Whether the District Court erred in determining that Travelers may recoup its defense costs expended on Ribi's behalf for those claims that the District Court ultimately determined were barred by the CGL policy's pollution exclusion.**

¶47 Although the District Court initially denied Travelers's recoupment costs for the neighboring property owners' suit, it later amended its order to include these costs in addition to the costs expended in the government suits it awarded earlier. Ribi argues that an insurer may not extinguish its duty to defend "potentially covered" claims retroactively and that Travelers thereby waived its recoupment rights when its reservation on March 10, 1999, came five years after the initial tender of the third-party suits. Ribi further argues that Travelers's reservation letters proved ineffective because it never expressly accepted the reservation and thus Travelers may not recoup its defense costs.

¶48 Travelers, on the other hand, contends that we should follow decisions from other jurisdictions that allow an insurer to recover defense costs when the insurer had no duty to defend. The court in *Grinnell Mut. Reinsurance Co. v. Shierk* (S.D. Ill. 1998), 996 F. Supp. 836, reviewed cases from other jurisdictions for guidance in deciding whether an insurer could recover defense costs in an assault claim when it had no duty to defend under a homeowner's policy. The court in *Grinnell* determined that to be entitled to reimbursement, an insurer must: (1) specifically reserve the right to seek reimbursement from the insured; and (2) provide the insured with adequate notice of this potential reimbursement. *Grinell*, 996 F. Supp. at 839. The court held that the insured had accepted the benefit of the insurer's defense and was fully appraised that the insurer reserved its right to seek reimbursement in

the event that it was later determined that it had no duty to defend the insured. *Grinell*, 996 F. Supp. at 839.

¶49 Similarly, in *United Nat. Ins. Co. v. SST Fitness Corp.* (6th Cir. 2002), 309 F.3d 914, the court held that an insurer may recover defense costs when the insurer did not have a duty to defend any of the asserted claims under a general liability policy where the insurer: (1) timely and explicitly reserved the right to recoup the costs; and (2) provided specific and adequate notice to the insured of the possibility of reimbursement. *United*, 309 F.3d at 921. The court determined a reservation of rights proves enforceable where an insurer meets these conditions even absent an express agreement by the insured. *United*, 309 F.3d at 921; *see also Colony Insurance Co v. G&E Tires & Service, Inc.* (Fla. Cir. 2000), 777 So.2d 1034, 1039 *citing* RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981) ("[a] party cannot accept tendered performance while unilaterally altering the material terms on which it is offered").

¶50 We likewise conclude the District Court properly determined that Travelers may recoup its defense costs expended on Ribi's behalf for those claims outside the CGL policy's pollution exclusion provision. Travelers timely and explicitly reserved its right to recoup defense costs when it notified Ribi of the reservation prior to the payment of the defense costs in letters dated February 10, 1994, for the neighboring property owners' suit and January 25, 1996, and March 10, 1999, for the state and federal government claims respectively. Travelers expressly reserved its right to recoup defense costs if a court determined that it had no duty to provide such costs. Travelers also provided specific and adequate notice of the possibility of reimbursement. Ribi implicitly accepted Traveler's defense under a reservation of rights when it posed no objections. Under these

20

circumstances, the District Court appropriately concluded that Travelers may recoup its defense costs.

**¶51    Whether the District Court erred in ordering Travelers to pay attorneys' fees that Ribi incurred in litigating pre-trial discovery motions.**

¶52    Finally, Travelers argues in its cross-appeal that the District Court improperly awarded Ribi attorneys' fees to sanction Travelers for refusing to produce drafting history relating to the CGL's pollution exclusion. Travelers moved for a protective order on the basis of our holding in *Sokolowski* that "sudden and accidental" was unambiguous as a matter of law and included a temporal component. Travelers maintains that it sought the protective order to avoid the costs associated with searching for and producing the voluminous drafting history regarding the pollution exclusion. The District Court denied Travelers's motion and ordered Travelers to pay Ribi's fees incurred in litigating the motion.

¶53    Travelers asked the District Court to reconsider its award of fees relating to the protective order after the District Court ultimately determined on summary judgment that the CGL policy's pollution exclusion's language was unambiguous and thereby rendered extrinsic evidence inadmissible. Travelers argued that fees are warranted under Rule 37(a)(4), M.R.Civ.P., only if the losing party's position was not "substantially justified" and the District Court's ruling on summary judgment verified the justification for its earlier motion for a protective order. The District Court concluded, however, that Travelers's concerns of costs related to searching for and producing the drafting history were not appropriate matters for a protective order during discovery, and thus, were not substantially justified.

¶54 The trial court has discretion to control discovery and determine from the circumstances of the case whether the parties have complied with discovery requests. *In re H.D.* (1992), 256 Mont. 70, 77, 844 P.2d 114, 119. We will reverse that determination only if the substantial rights of the opposing party have been so materially affected as to allow a possible miscarriage of justice. *In re H.D.*, 256 Mont. at 77, 844 P.2d at 119. A court may award costs under Rule 37(a)(4), M.R.Civ.P., for expenses incurred in relation to litigating motions for a protective order. If the motion is denied, the court shall require the moving party to pay the opposing party "the reasonable expenses incurred in opposing the motion, including attorney fees, unless the court finds that the making of the motion was substantially justified . . . ." Rule 37(a)(4), M.R.Civ.P.

¶55 We agree with the District Court that Ribi should have been allowed to discover the drafting history of the CGL policy's pollution exclusion and that Travelers, as the party seeking protection, failed to show good cause for its omission. Although the issues were ultimately adjudged in its favor, Travelers was not substantially justified seeking a protective order at the time due to the substantial case law relying on the drafting history in interpreting the "sudden and accidental" clause and its potential relevancy in aiding the court's determination. *See, e.g., Textron v. Aetna Cas. & Sur. Co.* (R.I. 2000), 754 A.2d 742, 751 (holding that the drafting history of the "sudden and accidental" exception to the pollution exclusion clause of a CGL policy facilitated an interpretation of "sudden" to include unexpected); *Nestle Food Corp. v. Aetna Cas. & Sur. Co.* (D. N.J. 1990) 135 F.R.D. 101, 104-105 (holding that the drafting history of operative language from a general liability policy is discoverable when ambiguity in policy has not been resolved); *Morton Intern, Inc.*

22

*v. General Acc. Ins. Co. of America* (N.J. 1993), 629 A.2d 831, 847-48 (holding that the pollution exclusion's drafting and regulatory history enhanced a fuller understanding of the meaning of its terms). Further, the District Court found Travelers's systematic obstruction during discovery "clearly and unequivocally stonewalling," and intentionally sought to prevent the discovery of potentially relevant material.

¶56 The record reveals the District Court administered the discovery process fairly. Thus, we conclude that the District Court exercised appropriate discretion in controlling discovery and did not violate Travelers's rights in compelling discovery and awarding fees. *In re H.D.*, 256 Mont. at 77, 844 P.2d at 119.

¶57 For the foregoing reasons, we affirm the District Court.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE