Hassan ZOK, Appellant,

v.

The ESTATE OF Richard B. COLLINS and Stephan B. Collins, as Personal Representative, Appellees.

No. S–10604.

Supreme Court of Alaska.

Feb. 6, 2004.

---

16. *Alaska Diversified Contractors,* 778 P.2d at 583.

17. *Id.*

18. *Id.*

**1006**

Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellant.

D. Scott Dattan, Law Offices of D. Scott Dattan, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

A creditor of an insolvent estate objected to its closure on the ground that the deceased had made fraudulent transfers. Without deciding whether this claim merited further inquiry, the court ordered the estate closed. Since property transferred in fraud of creditors is potentially estate property, we conclude that it was error to close the estate without addressing the validity of the claim.

1. *Zok v. Collins,* 18 P.3d 39, 41 (Alaska 2001).

## II. FACTS AND PROCEEDINGS

Hassan Zok sued attorney Richard B. Collins for malpractice in August of 1996.[1] Zok was awarded over $200,000 in this case in February of 2002.[2] Before the suit was filed but after allegedly receiving notice of Zok's claim, Collins conveyed at least twenty-nine parcels of real property to the Collins Family Trust. He and his spouse, Anne–Marie, were co-trustees and Anne–Marie also signed the deeds as a grantor.

Collins died on April 15, 2000. A year later probate proceedings were opened and his son Stephan was appointed personal representative. Zok, acting without an attorney, filed a creditor's claim in the probate proceedings that sought to set aside as fraudulent the conveyances to the Collins Family Trust.

At about the same time Zok sought to amend his complaint in the malpractice case to add a claim that fraudulent transfers had been made. This motion was denied. One ground for this ruling was that "denial of the motion will not deprive Mr. Zok of a remedy," because "he has filed the same claim in the Collins estate probate action."

In November 2001 Stephan Collins filed a final accounting. The final accounting referred to an inventory that had been filed a month earlier that indicated that Collins at the time of his death owned only $1,475 in personal property and no real property. No bank, brokerage, or IRA accounts that might be available to satisfy creditors under the non-probate transfer provisions of AS 13.33.215 were listed. The accounting set out Zok's claim and two other creditors' claims and noted that the total expenses of administration were over $19,000.

On December 11, 2001, notice of a hearing on the closing of the estate was issued. In relevant part the notice stated: "Any objections to the final accounting prepared by the Personal Representative or to the closing of the estate must be presented to the court at or before the time set for the hearing." Zok promptly filed a written objection. He referred to the transfers to the trust as fraudu-

2. *Zok v. Estate of Richard Collins,* No. 3AN–96–6415 Civ. (Alaska Super., April 24, 2002).

lent and objected to closing the estate without consideration of this claim.

On March 6, 2002, the hearing on closing the estate was held. Zok, still without counsel, appeared and renewed his objection. He was allowed to examine Stephan Collins, but the scope of the examination was constrained. Zok sought to ask about the estate's failure to respond to discovery concerning the trust in the malpractice case. He was not allowed to inquire on this subject. Zok sought to ask about Collins's "life collections—from Africa, from art," but was told by the standing master conducting the hearing that he could not do so since Stephan had testified that they did not exist. Zok mentioned twenty-nine parcels of property that had been conveyed to the trust, but the master indicated that this was a futile inquiry. At the conclusion of Zok's examination the master ruled that the estate had been fully administered, that it was insolvent, and that it should be closed. The master stated that there was no issue concerning Zok's fraudulent conveyance claims. According to the transcript, the master stated:

> I would find that the estate has been fully administered, would specifically find as far as Mr. Zok's claims that there is no issue concerning the trust. There is a provision concerning the trust in the will. But, based on the inventory that was filed with the court ... (tape ends abruptly).

Two days after the March 6 hearing, Zok hired counsel and Zok's subsequent acts referred to here were taken through counsel. On March 18, 2002, Zok filed a renewed objection to the closing of the estate on the grounds that whether the transfer of Collins's assets to the trust prior to his death should be set aside had not been adjudicated. At about the same time that this objection was filed, Zok also filed a separate civil action to set aside as fraudulent the challenged conveyances.[3] On March 22 the master formally recommended that the estate be closed. Superior Court Judge Mark Rindner allowed Zok to file a written objection to this recommendation within ten days. Zok resubmitted the objection that he had previously submitted on March 18. The master, after reviewing the resubmission, again recommended that the estate be closed. Judge Rindner signed an order closing the estate on April 4, 2002.

On May 10, 2002, Zok moved for relief from the order closing the estate, again based on the unadjudicated fraudulent conveyance claim. Zok argued that he was not put on notice that he was expected to prove his fraudulent conveyance claim by the notice of hearing. His memorandum in support of the motion states:

> On December 11th the Estate scheduled a closing hearing and sent notice thereof to Mr. Zok.... Please note that the notice states only that objections to the closing of the Estate must be made at the hearing. There is no reference to any evidentiary hearing with regard to Mr. Zok's claim that the Estate's assets had been fraudulently conveyed to the "family trust." Mr. Zok did object. He pointed out in both written and pleading form that he had found a record of 29 real property transfers into the trust by the decedent after he had notice of Zok's claim. Mr. Zok advised the Master that he had in the other action [the malpractice action] sent interrogatories as to the other assets of the trust that the personal representative refused to answer. Mr. Zok also advised the court, as did the personal representative that none of the trust assets were included among the Estate's inventory.... In fact the Estate's position was that it was entitled to be closed because it was bankrupt, yet no disclosure was made as to what

---

3. In the separate fraudulent conveyance suit the following are the main allegations:

> 5. Subsequent to receiving notice of the plaintiff's impending lawsuit the decedent Richard B. Collins, transferred substantially all his assets to himself and his wife, Anne–Marie Collins as trustees of the Collins Family Trust. Said transfer was fraudulent and done without adequate consideration in an effort to place the

decedent's assets beyond the reach of plaintiff and perhaps other potential creditors.

> 6. The trust was not registered although it was required to be registered pursuant to Alaska Statute 13.36.005. The exact extent of the assets transferred into the trust is unknown, however, over a two day period 29 quit claim deeds were recorded purporting to transfer various Alaskan parcels into the trust.

entity was paying the estate's administrative fees or the attorney fees in the malpractice action.

. . . .

The probate court did not address the fraudulent conveyance claim as it should have nor did it give Mr. Zok sufficient notice or opportunity to conduct a hearing on that issue.

On May 20, 2002, the standing master recommended denial of Zok's motion for relief from the judgment. The master wrote: "Mr. Zok was advised on the record to state his objection to closing and present evidence. He reiterated his objection that he had an uncollected judgment. He presented no evidence when invited to do so several times. The closing order should stand."

Zok filed an objection to this recommendation that stated:

The gist of the Motion For Relief is that Mr. Zok, who was *pro per*, was unfairly surprised. The fact that he was invited "on record" to present evidence is at the heart of the problem. The notice of hearing he received of the date of the hearing instructed him only to make his objections known. He had no adequate notice that he was supposed to be ready to try a fraudulent conveyance case at that hearing. He in fact stated when "invited to put on proof" that he had not gotten responses to his previous discovery requests. It is a fundamental requirement of due process that one be given adequate notice and a meaningful opportunity to present one's case.

On June 17, 2002, the superior court denied Zok's motion for relief from the judgment.

Meanwhile, the estate had moved to dismiss Zok's separate fraudulent conveyance action. Among the grounds for the motion was a claim that the order closing the probate estate was res judicata. Zok opposed the motion and sought to consolidate the case with the probate proceedings. The motion to dismiss was granted on June 3, 2002, and

Zok's consolidation motion was denied in the probate proceedings on June 17, 2002.

## III. DISCUSSION

Zok now appeals in this, the probate proceeding. He claims that he was not given notice that his fraudulent conveyance claims were to be tried at the hearing concerning closing the estate and that it was error to close the estate before the claims were resolved.

■ In reply, the estate claims that Zok had an opportunity to present his fraudulent conveyance claims at the March 6 hearing, that he failed to do so, and that therefore his claims are barred. The estate also argues that even if Collins had not made the real estate conveyances to the trust, the property would not have become property of the estate; instead it "would have passed to Anne–Marie directly by operation of law."

■ Zok is correct that the notice of hearing that he received did not give him adequate notice that a trial of the fraudulent conveyance claim was contemplated. No reasonable person would have so concluded, since the notice only called for "objections to the final accounting prepared by the Personal Representative or to the closing of the estate," and stated that such objections could be presented "at or before the time set for the hearing." "Due process requires the 'opportunity to be heard at a meaningful time and in a meaningful manner.' The purpose of this requirement is to allow 'the aggrieved party the opportunity to present his case and have its merits fairly judged.' "[4] Given the content of the notice, it is clear that these requirements have not been satisfied.

■ Further, the standing master's conclusion in the May 20, 2002 recommendation that Zok presented "no evidence" is clearly erroneous. Zok presented a lengthy affidavit in which he explained that after he gave Collins notice that he was about to file a malpractice suit, Collins made extensive conveyances of property to a trust under circumstances suggesting that the conveyances

---

**4.** *Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)).

were made without consideration. The affidavit also noted that despite the conveyance to the trust Collins retained control of the property as co-trustee. It was also clear that Collins died insolvent, excluding any interest he had in the trust and property that was subject to non-probate transfers at the time of his death. These circumstances amount to common "badges of fraud," a term used to describe circumstantial factors that may justify a conclusion that a conveyance was made with an intent to defraud creditors. "We have recognized inadequate consideration, the insolvency of the debtor/transferor, and the transfer of assets in anticipation of a pending suit to be among the badges of fraud."[5] Thus Zok presented evidence that was at least suggestive that the conveyances were fraudulent.

It was error to close the estate without formally addressing and in some manner adjudicating Zok's fraudulent conveyance claim. Under AS 13.16.385 only the personal representative may prosecute claims of fraudulent conveyance on behalf of unsecured creditors of the estate.[6] Under this statute, Stephan Collins, as personal representative, may have a duty to proceed against his mother, as trustee, to set aside certain transfers to the trust. What the appropriate remedy might be if Stephan unreasonably or in bad faith refuses to undertake this duty has not been briefed. But before any decision can be made as to whether Stephan Collins should proceed to recover property, information should be developed as to the nature of the trust and the property transferred to it, including the time of each transfer and the character of Collins's title to the property at the time of transfer. Given the relationship between the personal representative and the trustee, Zok should be given an opportunity to participate in reasonable discovery on these subjects.

As noted, the estate also contends that if the property transferred to the trust had not been so transferred it would not have become estate property, but would have passed to Anne–Marie Collins by operation of law. This contention cannot be decided on appeal for several reasons. We do not know the estate that Collins held in particular parcels prior to their transfer. Further, assuming that real property was held jointly in a tenancy by the entirety with a right of survivorship, we have not been directed to any authority concerning the rights of creditors to such property upon the death of a debtor/co-owner.[7] Finally, the record does not purport to reflect comprehensively all of the property that was transferred by Collins to the trust, nor does it reflect property that may have been transferred outside of probate upon Collins's death. The paucity of Collins's estate suggests that there may have been such property. If so, creditors may have a right to it under AS 13.33.215(a).[8] Thus, on this record, we are unable to conclude that any property transfers made by Collins before or as a result of his death are necessarily beyond the reach of the estate for the benefit of creditors.

We express no opinion as to the eventual outcome of this case on remand. What is required are orderly procedures with notice to all interested parties that determine whether Collins had property that should be made available to creditors of the estate under applicable principles of Alaska law.

---

5. *Nerox Power Systems, Inc. v. M–B Contracting Co.*, 54 P.3d 791, 797 (Alaska 2002).

6. AS 13.16.385 provides:
   The property liable for the payment of unsecured debts of a decedent includes all property transferred by the decedent by any means which is in law void or voidable as against creditors, and subject to prior liens, the right to recover this property, so far as necessary for the payment of unsecured debts of the decedent, is exclusively in the personal representative.

7. AS 13.33.216(b) provides that the provisions of our probate code relating to rights to multiple person accounts do not "affect the law governing tenancy by the entirety." But this does not answer the question as to the rights of estate creditors to real property so held.

8. AS 13.33.215(a) provides:
   If other assets of the estate are insufficient, a transfer resulting from a right of survivorship or POD designation under AS 13.33.201–13.33.227 is not effective against the estate of a deceased party to the extent needed to pay claims against the estate and statutory allowances to the surviving spouse and children.

## IV. CONCLUSION

REVERSED and REMANDED for further proceedings consistent with this opinion.