Jennifer VAN SICKLE, Appellant,

v.

Joshua McGRAW, Appellee.

No. S–11725.

Supreme Court of Alaska.

April 28, 2006.

Gayle J. Brown, Anchorage, for Appellant.

Terry C. Aglietti, Aglietti, Offret & Woofter, Anchorage, for Appellee.

Christine McLeod Pate, Sitka, Alaska Network on Domestic Violence and Sexual Assault Legal Advocacy Project, for Amicus Curiae, Alaska Network on Domestic Violence and Sexual Assault.

Mark Regan and Michael L. Silverman, Alaska Legal Services Corporation, Anchorage, for Amicus Curiae A.K. and D.R.

Before: BRYNER, Chief Justice,
MATTHEWS, EASTAUGH, FABE, and
CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Jennifer Van Sickle challenges the superior court's grant of primary physical custody of her daughter to the child's father, Joshua McGraw. Her appeal raises two main issues: whether the 2004 amendments to the child custody statute, AS 25.24.150, apply to this case and whether the superior court abused its discretion in awarding custody to Joshua. We conclude that the amendments do not apply here because the evidence in this case had already closed by the date the amendments became effective. We also conclude that the superior court did not abuse its discretion by awarding custody to Joshua. We therefore affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Joshua McGraw and Jennifer Van Sickle f/k/a Weed are the parents of one child, born in Sitka in July 2000. Joshua and Jennifer were never married. They separated within months of their child's birth and for two years shared custody equally. In August 2002 the parties entered into an agreement to alternate custody every eighty-nine days. The following month Jennifer moved to Michigan, where she resides with her husband, Jason Van Sickle. Joshua lives in Sit-

ka. For two years the child moved between Michigan and Alaska per the agreement.

In April 2003 Jennifer filed a petition in Michigan for sole physical custody of the child. The Michigan court dismissed her petition for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act. Both the Michigan and Alaska trial courts agreed that Alaska has jurisdiction over the dispute because Alaska is the child's "home state" as that term is used in each state's respective child custody jurisdiction act.

In response to Jennifer's Michigan petition, Joshua filed suit in Alaska to secure primary custody. Trial was held on June 28 and 29, 2004 and written closing arguments were submitted to the court on July 28 and August 3, 2004. On July 1, 2004 Senate Committee Substitute for Committee Substitute House Bill 385 (H.B.385) took effect.[1] House Bill 385 amended AS 25.24.150, changing how courts must consider the effect of domestic violence when ruling on child custody disputes.[2] Among other things, the amendment created a rebuttable presumption that a parent who has a "history of perpetrating domestic violence" may not be awarded custody of a child.[3] On August 9, 2004 the superior court asked the parties to submit supplemental briefing on the applicability of the amended version of AS 25.24.150.

Having reviewed the additional briefing, the superior court issued a separate order concluding that the amendments do not apply to this case. The court also concluded that even if they did apply, Joshua did not have a "history of perpetrating domestic violence,"

---

1. Ch. 111, § 6, SLA 2004.

2. *Compare* AS 25.24.150(c)(6), (g), (h) *with* former AS 25.24.150(c).

3. AS 25.24.150(g), added in 2004, provides:

There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.

A parent has a "history of perpetrating domestic violence" if the court finds that "during one incident of domestic violence, the parent causes serious physical injury or the court finds that the

parent has engaged in more than one incident of domestic violence." AS 25.24.150(h).

The presumption [against custody] may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

AS 25.24.150(h).

and that if he did have such a history, he had overcome the presumption against custody.

In its written decision, the superior court awarded primary physical custody to Joshua. The court, although recognizing that both Jennifer and Joshua are "good parents" who share loving relationships with the child, found it to be in the child's best interests to live with Joshua during the school year.

Two factors weighed heavily in the court's decision. First, applying the former statute, the court found that Joshua was "better at achieving" an "open and loving frequent relationship" between the child and the other parent. The court found it disturbing that Jennifer initiated the Michigan lawsuit; the court considered her lawsuit "an effort to avoid the shared custody agreement that the parties had entered into in August 2002 before [Jennifer] departed for Michigan." The court also found that Jennifer "seems to have some resentment towards [Joshua], which he does not have towards her." In support of that finding, the court noted a 2003 incident in which Jennifer contacted Sitka police and falsely alleged that Joshua used drugs.

Second, the court considered it "pertinent" that the child has extended paternal and maternal family in Sitka. Jennifer has only extended family through her marriage in Michigan. The court also observed that the child's Tlingit descent was more likely to be recognized in Sitka than in Michigan.

The court noted that both parties had acted violently during the relationship. In September 2001 Joshua was "arrested and charged with Assault III, two counts of Assault IV, Burglary I, Theft III, and two counts of Criminal Mischief III." All charges except the criminal mischief charges were dropped. Joshua attended a batterers' intervention program as part of his probation. In October 2003 Joshua left an "obscene" message on the Van Sickles' answering machine in Michigan. The report of the court-appointed investigator noted police reports

"show[ing] arguing, hitting, throwing items, destruction of property, and other childish, immature behavior on the part of both parties." The superior court did not find these acts of domestic violence dispositive. The court stated:

> No DV order has ever been sought or issued in this case. Ms. Van Sickle is not afraid of Mr. McGraw and generally holds her own in the relationship. The agreements she has made in this case concerning the sharing of custody, or the actions she has taken that are referenced in this Court's findings regarding her willingness to allow an open loving relationship between [the child] and Mr. McGraw were not in any manner influenced by domestic violence that previously had occurred between the parties.

The superior court found joint legal custody and unsupervised visitation appropriate. Both parties had agreed that shared custody is "workable and appropriate." The court therefore found it in the child's best interest to award primary physical custody to Joshua.

Jennifer appeals. She argues that the superior court erred by not applying the amended version of AS 25.24.150 here, and she argues that even if the amendments do not apply, the court erred in the way it applied former AS 25.24.150.

## III. DISCUSSION

### A. Standard of Review

■■■ Whether a statutory amendment applies to a case in progress raises a legal question which we review applying our independent judgment.[4] If the application question also turned on a fact finding, we would review it for clear error.[5]

■■■ Trial courts are vested with broad discretion in determining child custody.[6] We will disturb a trial court's resolution of child custody issues only if we are convinced that the record shows an abuse of discretion or if controlling findings of fact are clearly erro-

---

4. *See Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (holding that questions of law are reviewed de novo); *Rush v. State, Dep't of Natural Res.*, 98 P.3d 551, 553 (Alaska 2004) (holding that question of potential retroactive application of statute is reviewed de novo).

5. *See Rockstad*, 113 P.3d at 1219.

6. *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993).

neous.[7] A trial court abuses its discretion if it considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.[8] We will hold that a trial court clearly erred only when left with a definite and firm conviction that the trial court has made a mistake.[9]

## B. The 2004 Amendments to AS 25.24.150 Do Not Apply in this Case.

■ The superior court determined that it would be unlawful to apply the amended statute to this case because the amended statute does not expressly require that it be given retroactive effect and because the amended statute affects substantive rights. We agree with the superior court's conclusion that the amended statute does not apply to this case, but for different reasons.[10] The amendments to AS 25.24.150 took effect on July 1, 2004.[11] The trial in this case ended on June 29, 2004. The evidence was therefore closed before the effective date of the amended statute. Neither party asked to reopen the evidence or present further testimony, although the superior court asked for supplemental briefing on the applicability of the amendments.

We conclude that the amended version of AS 25.24.150 does not apply to this case

because the evidence closed before the effective date of the statute. The superior court therefore did not err by analyzing this case under former AS 25.24.150.

## C. The Superior Court Did Not Abuse Its Discretion in Awarding Primary Physical Custody to Joshua.

■ The superior court determined that, applying the best-interest factors in former AS 25.24.150(c), primary physical custody should be awarded to Joshua.[12] Jennifer argues that the superior court erred in applying two of the statutory factors—AS 25.24.150(c)(5) and (c)(6). Jennifer argues that the court erred in finding that Joshua was better at achieving an open and loving relationship between the child and the other parent. And she argues that the superior court erred in finding that Sitka is a better home for the child than Michigan in terms of extended family and cultural opportunities.

The superior court determined that Joshua is better than Jennifer at achieving an "open and loving frequent relationship" between the child and the other parent. Jennifer argues that this finding was based "solely" on the fact that Jennifer filed a Michigan petition for custody. She argues that the court impermissibly faulted her for starting the litigation process in Michigan when Joshua also started litigation in Alaska.

7. *Silvan v. Alcina*, 105 P.3d 117, 120 (Alaska 2005).

8. *Id.* (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

9. *Dingeman*, 865 P.2d at 96.

10. We may affirm a judgment on any grounds that the record supports, even grounds not relied on by the superior court. *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005). We express no opinion about whether the amended statute should be given retroactive effect or whether applying the amended statute raises procedural due process issues.

11. Ch. 111, § 6, SLA 2004.

12. Before the 2004 amendments became effective, former AS 25.24.150(c) required the court to consider the following factors in determining custody in accordance with the child's best interests:
    (1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

Jennifer's argument is flawed for two reasons. First, the superior court relied on more than the Michigan filing in making its determination regarding Jennifer's ability to foster an open relationship between the child and Joshua. The superior court noted Jennifer's "resentment towards [Joshua]," citing the fact that she falsely accused him of using drugs in retaliation for not allowing her to spend the child's birthday with the child. Second, Joshua's filing was in response to Jennifer's. The record does not establish that he would have filed his Alaska complaint even if she had not filed suit in Michigan. Jennifer has not demonstrated that the superior court abused its discretion in determining that Joshua was better at fostering an open relationship between the child and the other parent than Jennifer.

The superior court also found that Sitka is a better home for the child than Michigan in terms of extended family and cultural support. Jennifer argues that the court's finding violates our holding in *Moeller–Prokosch v. Prokosch.*[13] In that case Moeller–Prokosch appealed a decision awarding primary physical custody of her son to the father after assuming that Moeller–Prokosch would relocate out of Alaska.[14] We reversed because in considering the fifth best interest factor, the trial court focused too narrowly on "geographic stability" and had not considered "each parent's respective ability to maintain stable and satisfactory relations between themselves and the child."[15] We also criticized the trial court's ruling because it only considered the effect of the child's separation from his father if his mother moved with the child without considering the effect of the child's separation from his mother if the mother moved without him.[16] We concluded that the trial court must conduct a "symmetric consideration of the consequences to [the child] both if [the mother] leaves with him and if she leaves without him."[17]

Jennifer's reliance on *Moeller–Prokosch* is misplaced. In *Moeller–Prokosch,* both par-

ents lived in Alaska and one wanted to move away.[18] In this case, Jennifer already lives in Michigan. The child has been living with her there, off and on, for over two years. And the superior court considered each parent's ability to maintain acceptable relations between themselves and their daughter.[19] The superior court noted that the child "is in a stable, satisfactory environment in either parent's home." The court did not, as Jennifer argues, give "too little consideration to the community ... of the minor child in Michigan." The court heard testimony about home environment and extended family in both Sitka and Michigan. The court noted that Jason Van Sickle has extended family in Michigan, but concluded that it is "more significant that a biological parent has extended family in the area where the child may reside than the fact that a spouse of a parent has such extended family." Although that conclusion might not hold true in all situations, it was not an abuse of discretion to reach it here, given the court's findings regarding the child's Tlingit heritage and her extended paternal and maternal family in Sitka.

Jennifer also argues that the superior court failed to give "symmetric consideration of the consequences" to the child of the custody determination. The superior court's findings of fact do not include findings about the impact on the child of being separated from either parent. But at the time of trial, the child had already been separated from each parent for three months at a time for over two years. The court noted that this arrangement had worked "remarkably well under the circumstances." Because the parties' former agreed-upon arrangement resulted in prolonged separation from each parent, and because the court found that this arrangement had worked well, there was no reason to consider whether separating the child from each parent for long periods of time would be harmful. The court did not

**13.** *Moeller–Prokosch v. Prokosch,* 99 P.3d 531 (Alaska 2004).

**14.** *Id.* at 533.

**15.** *Id.* at 534–35.

**16.** *Id.* at 535.

**17.** *Id.* at 535–36.

**18.** *Id.* at 533.

**19.** *See id.* at 534–35.

abuse its discretion by failing to make specific findings on this topic.

Finally, Jennifer argues that the superior court erred when it concluded that custody with Joshua would give the child a better chance to maintain her Tlingit heritage. Jennifer suggests that the child's Tlingit heritage is through Jennifer's family alone. But Joshua testified at trial that his family is also of Tlingit ancestry. The court concluded in its findings of fact that Tlingit culture is more likely to be recognized in Sitka than Michigan. That conclusion is reasonable; Tlingit culture is rooted in the region surrounding Sitka.

We note that Jennifer has not argued on appeal that the superior court erred by not considering, in the context of former AS 25.24.150, an episode of domestic violence testified to by her husband, Jason. Jason testified at trial about an April 2002 incident in which Joshua drove menacingly toward Jason and Jennifer while screaming obscenities. Although Jennifer mentions this vehicular incident in her briefing on appeal in support of her argument that Joshua has a "history of perpetrating domestic violence," as that phrase is used in the amended version of AS 25.24.150, she does not argue in her opening brief that the superior court erred in not considering this incident in applying former AS 25.24.150. She addresses the issue in her reply brief, but new issues raised in a reply brief are considered waived.[20] Jennifer also failed to mention the vehicular incident in her trial brief, in her written closing argument at trial, and in her motion for reconsideration. She therefore also failed to preserve the argument below.[21]

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's grant of primary physical custody to Joshua.

---

**20.** See Crittell v. Bingo, 83 P.3d 532, 536 n. 19 (Alaska 2004) (stating that reply brief " 'may raise no contentions not previously raised in either the appellant's or appellee's briefs' ") (quoting Alaska R.App. P. 212(c)(3)).

**21.** See Brandon v. Corr. Corp. of Am., 28 P.3d 269, 280 (Alaska 2001).