**Mike SMITH d/b/a Wasilla Concrete, Petitioner,**

v.

**Raymond KOFSTAD, individually and d/b/a Busch Concrete, and Marguerite Kofstad, Respondents.**

No. S–12679.

Supreme Court of Alaska.

April 24, 2009.

---

**18.** 171 P.3d 41(Alaska 2007).

**19.** *Id.* at 70.

Sarah J. Tugman, Anchorage, for Petitioner.

Patricia Hefferan, Wasilla, for Respondents.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Alaska Statute 09.35.020 provides that a judgment creditor must obtain court permission to execute on a judgment if more than five years have elapsed after entry and no previous execution has been issued.[1] Per-

---

1. AS 09.35.020 provides:

When a period of five years has elapsed after the entry of judgment and without an execu-

mission will be granted if there are "just and sufficient reasons" for failure to previously execute on the judgment. In this case judgment was issued in 1995, but the judgment creditor did not attempt to execute on it for nearly ten years. He explained the delay by alleging that the judgment debtor, who died in 2001, lacked assets sufficient to satisfy the judgment during that time. The district court denied permission to execute, finding the judgment creditor had made no effort to verify whether assets did in fact exist. The judgment creditor appealed and the superior court affirmed the district court's decision.

We accepted the judgment creditor's petition for hearing and now affirm on an alternative ground: because ownership of the property upon which the judgment creditor sought execution passed by operation of law to the judgment debtor's spouse upon the judgment debtor's death, the effort to execute is futile.

## II. FACTS AND PROCEEDINGS

Mike Smith, d/b/a Wasilla Concrete, sued Raymond Kofstad, d/b/a Busch Concrete, over nonpayment for construction materials and supplies. Smith obtained a default judg-

ment against Raymond[2] for $41,589.41 in September 1995. The judgment was recorded the next month in the Palmer Recording District,[3] where Raymond and Marguerite owned a home as tenants by the entirety. Raymond died in January 2001.

Smith first sought a writ of execution in August 2005, almost ten years after entry of judgment and more than four years after Raymond died. Smith filed a motion in the district court requesting leave to execute on the Kofstad home pursuant to Alaska Rule of Civil Procedure 69(d).[4] The motion was accompanied by an affidavit explaining that Smith had not previously obtained a writ of execution because he "did not believe that the judgment debtor had assets with net value capable of satisfying a portion of the judgment."[5] He further stated: "I also became aware that the defendant was deceased during the Fall of 2000[sic]. I checked property records and discovered that a number of IRS liens had been recorded, which would have made execution upon the judgment debtor's real property fruitless. I believe the IRS liens have since expired." Smith served the motion, affidavit, and a summons on Marguerite.[6] She opposed the motion,[7]

---

tion being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. The court shall grant the motion if the court determines that there are just and sufficient reasons for the failure to obtain the writ of execution within five years after the entry of judgment.

**2.** Because this case concerns both Raymond Kofstad and his wife, Marguerite Kofstad, we will refer to the Kofstads by their first names for clarity.

**3.** AS 09.30.010 provides, in part, that a recorded judgment "becomes a lien upon the real property of the defendant that is in the recording district, that is not exempt from execution, and that is owned by the defendant at the time or acquired by the defendant afterward."

**4.** Alaska R. Civ. P. 69(d) provides in relevant part:

(d) **Execution After Five Years.** Whenever a period of five years shall elapse without an execution being issued on a judgment, no execution shall issue except on order of the court in the following manner:
(1) The judgment creditor shall file a motion supported by affidavit with the court where the

judgment is entered for leave to issue an execution. The motion and affidavit shall state the names of the parties to the judgment, the date of its entry, the reasons for failure to obtain a writ for a period of five years and the amount claimed to be due thereon or the particular property of which possession was adjudged to the judgment creditor remaining undelivered.

**5.** Smith's motion requested "leave to issue an execution in this action," but did not specify that Smith sought to execute on the Kofstad home. Smith's supporting affidavit made clear he intended to execute on the home: "I understand and believe that the judgment debtor owned real property with his wife, Marguerite Kofstad, and that the property remains subject to execution." Smith's brief confirms he "sought to execute on the home to which the debtor and his wife took title in 1975."

**6.** Alaska R. Civ. P. 69(d)(2) provides:

Upon filing such motion and affidavit the judgment creditor shall cause a summons to be served on the judgment debtor in accordance with the provisions of Rule 4. In the event the judgment debtor is deceased, the summons may be served upon the judgment debtor's

and the district court denied leave to execute without explanation.

Smith appealed the denial to the superior court. Marguerite then argued that "there is no showing that there were no assets to execute against while the debtor was alive" and contended that Smith "did not ask a process server to do a bank sweep, to seize the permanent fund dividend or take any action whatsoever to collect any amount from any source." Smith did not expressly deny these assertions, but argued Marguerite had waived this defense by not raising it in response to his original motion for leave to execute.[8] The superior court remanded the case to the district court to make factual findings and to explain the denial of Smith's motion for a writ of execution.

The district court then explained that Smith's reasons for delaying execution were inadequate: "[Smith's] subjective belief as to the value of decedent's assets or decedent's position with the IRS does not justify ... [Smith's] delay in obtaining a writ of execution."

The superior court affirmed the district court's denial of Smith's motion, stating that Smith bore the burden of "demonstrating that [he] made some inquiry regarding available assets during the five year period" and that Smith "did nothing to execute on the

debt, or even to ascertain what assets were or were not available to do so, until after January 2001." The court concluded that Smith had "not demonstrated a fair and sufficient reason to relax the five-year deadline" for execution.

We accepted Smith's petition for hearing, and later asked the parties to address whether, in light of Raymond's death and the extinguishment of his interest in the tenancy by the entirety, Smith could execute on the Kofstad home.

## III.  STANDARD OF REVIEW

■ "When there has been an appeal to the superior court as an intermediate court of appeal, we 'approach the issues independently.' "[9] "We may affirm a judgment on any grounds that the record supports, even grounds not relied on by the [lower] court."[10]

## IV.  DISCUSSION

■ A judgment creditor generally can obtain a writ of execution as a matter of course within five years of the judgment.[11] There is no definitive time limitation on the commencement of executions of judgment,[12] but if the judgment creditor does not seek a writ of execution within five years, "no execution may issue except by order of the court in

representative. The summons shall state the amount claimed or the property sought to be recovered under the judgment.

Although the record suggests that no probate proceedings were initiated after Raymond's death and Marguerite therefore was not the formal personal representative of his estate, the parties apparently assumed without much question that Marguerite was Raymond's "representative" for purposes of Rule 69(d)(2). We express no opinion on this issue.

7.  Alaska R. Civ. P. 69(d)(3) provides:

The judgment debtor, or, in the event of his death, the judgment debtor's representative, may file and serve a verified answer to such motion within the time allowed to answer a complaint, alleging any defense to such motion which may exist. The judgment creditor may file and serve a verified reply to such answer. The judgment debtor waives all defenses and objections which the judgment debtor does not present by answer as herein provided.

8.  *See id.*

9.  *Hallam v. Holland Am. Line, Inc.,* 27 P.3d 751, 753 (Alaska 2001) (quoting *Frontier Saloon, Inc. v. Short,* 557 P.2d 779, 781(Alaska 1976)).

10.  *Van Sickle v. McGraw,* 134 P.3d 338, 341 n. 10 (Alaska 2006).

11.  AS 09.35.010 ("A writ of execution may be issued in favor of ... [the] party in whose favor a judgment is given that requires the payment of money."); *State, Dep't of Rev., Child Support Enforcement Div. v. Demers,* 915 P.2d 1219, 1220 (Alaska 1996) ("The plain language of [AS 09.35.010] gives the court no discretion to decide whether to issue a writ of execution once a valid judgment for the payment of money has been entered."). After *Demers* was decided AS 09.35.010 was amended to allow issuing the state writs of execution on behalf of crime victims who received restitution judgments, but the portion of text interpreted in *Demers* was not substantively altered. *See* Ch. 92, § 2, SLA 2001.

12.  *Brotherton v. Brotherton,* 142 P.3d 1187, 1189 (Alaska 2006).

which judgment is entered."[13] The court shall grant leave to execute only if it determines "there are just and sufficient reasons for the failure to obtain the writ of execution within five years after the entry of judgment."[14] We have held that a judgment debtor's previous lack of assets that could satisfy the judgment, rendering execution futile, is a just and sufficient reason to permit leave to execute under AS 09.35.020.[15]

The parties disagree whether, as a matter of law, a judgment creditor must diligently try to verify the lack of assets during the five year period to merit permission to later execute on the judgment. But because execution is now futile—when Raymond died and Marguerite took full ownership of their home by operation of survivorship, Smith's ability to execute on Raymond's share of the property was extinguished—we need not reach the question raised by the parties.

■ When an individual judgment debtor dies, his or her property generally is transferred through probate proceedings to heirs or devisees, subject to creditor claims against the decedent.[16] If a judgment creditor has an existing lien on specific property owned by the judgment debtor, the lien survives the judgment debtor's death and can be foreclosed as if the judgment debtor were still living.[17] Alternatively the judgment creditor can file a claim in the probate proceedings to have the debt satisfied from the decedent's estate.[18]

■ But when property is owned by husband and wife as tenants by the entirety and one spouse dies, the decedent's share in the property does not pass through probate. Instead, the decedent's share is extinguished at death and the surviving spouse takes full ownership of the property by operation of law from the original conveyance: "The common law theory ... is that the decedent's interest vanishes at death, and therefore no probate is necessary because no interest passes to the survivor at death."[19] When the decedent's share in unsevered survivorship property extinguishes, so therefore must the putative interest of any creditor in that property. Courts in other jurisdictions have uniformly assumed, if not expressly stated, that with respect to unsevered survivorship property, the death of a judgment debtor and the consequent destruction of the judgment debtor's share in the property also destroys any interest of a judgment creditor in that share.[20] This is an issue of first impression

**13.** AS 09.35.020.

**14.** *Id.*

**15.** *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 662 (Alaska 2001).

**16.** AS 13.16.005.

**17.** AS 09.35.060 ("If the judgment debtor dies after judgment, execution may be issued on the judgment in the manner and with the effect as if the debtor were still living, except as provided in AS 13.16.505."); AS 13.16.505 ("No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or a personal representative, but this section shall not be construed to prevent the enforcement of mortgages, pledges, or liens upon real or personal property in an appropriate proceeding.").

**18.** AS 13.16.020; AS 13.16.465.

**19.** 4 James H. Backman et al., Thompson on Real Property § 33.02, at 121 (David A. Thomas ed., 2d ed.2004) (quoting Jesse Dukeminier & Stanley M. Johanson, Wills, Trusts, and Estates 350 (6th ed.2000) (internal quotation marks omitted));

*accord* 7 Richard R. Powell, Powell on Real Property § 51.03(3) (Michael Allan Wolf ed., 2008) ("Survivorship is central to a joint tenancy. The joint tenant who survives the other cotenants takes the entire estate; the estates of deceased joint tenants have no interest. Theoretically the survivor's interest attaches by means of the original conveyance, not by transfer from the decedent.").

**20.** *See* Francis M. Dougherty, *Judgment Lien or Levy of Execution on One Joint Tenant's Share or Interest as Severing Joint Tenancy*, 51 A.L.R.4th 906 § 2(a) (1987) ("On occasion the question has arisen whether the mere filing or docketing of a judgment lien, without levy or execution, severs a joint tenancy. It appears that all of the courts which have considered this issue in situations where the debtor-tenant died prior to execution, sale, or expiration of the period of redemption after sale have concluded that the lien did not sever the joint tenancy, reasoning that upon the death of the debtor that party's interest went to the survivor and therefore there was no property interest to which the lien could attach."); *see also* 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 31 (2008) (stating that mere docketing of judgment against joint tenant does not sever joint tenancy, and that if judgment debtor dies prior to

for this court.[21]

 We hold, in accordance with the uniform practice in other jurisdictions and with the logic of tenancy by the entirety, that: (1) recording a judgment against a judgment debtor, thus creating a judgment lien against property owned by the judgment debtor, does not sever a tenancy by the entirety between the judgment debtor and spouse, and (2) a judgment creditor's interest, if any, in a judgment debtor's interest in an unsevered tenancy by the entirety is extinguished when the judgment debtor predeceases the spouse.[22] We observe that a judgment creditor may take action to sever a tenancy by the entirety:

> If an individual and another own property in this state as tenants in common or tenants by the entirety, a creditor of the individual ... may obtain a levy on and sale of the interest of the individual in the property. A creditor who has obtained a levy, or a purchaser who has purchased the individual's interest at the sale, may have the property partitioned or the individual's interest severed.[23]

Severance terminates a tenancy by the entirety, nullifying survivorship [24] and thus protecting a judgment creditor's interest in the judgment debtor's share of the property. We express no opinion on when in the execution process a tenancy by the entirety is actually severed. Smith never attempted to

levy on the Kofstads' home prior to Raymond's death, and the Kofstads' tenancy by the entirety therefore remained unsevered; Raymond's death consequently extinguished his interest in the home.

Because Smith is unable to execute on the Kofstad home, his application under AS 09.35.020 for leave to execute on the home is futile.

## V. CONCLUSION

We AFFIRM the decision of the superior court on the alternative ground set forth above.

---

severance of joint tenancy, surviving tenant is sole owner and not subject to lien).

21. In *Zok v. Estate of Collins*, 84 P.3d 1005, 1006–08 (Alaska 2004), we considered an appeal by a judgment creditor who claimed the judgment debtor had fraudulently transferred assets to a trust. The judgment debtor died before the judgment against him was issued. His estate argued that even if assets had been fraudulently transferred, the judgment creditor could not prevail because those assets had passed to the judgment debtor's spouse by right of survivorship, out of the judgment creditor's reach. *Id.* at 1009. We decided the appeal on other grounds. *Id.*

22. We note that a judgment debtor owning property individually or as a tenant in common with a spouse cannot avoid an existing lien against the judgment debtor's interest by conveying the property to both spouses as tenants by the entirety. *See* AS 09.30.020 (stating that "[a] conveyance of real property or interest in real property

is void against a judgment lien that is recorded before the conveyance is recorded").

23. AS 09.38.100(a); *see also* AS 09.38.010 (noting interplay of homestead exemption to execution on spousal interest in property held as an entirety estate when the property is used as a principal residence).

24. *See* POWELL, *supra* note 18, § 51.04(1) ("A joint tenancy can be severed by a unilateral act of one of the tenants ... that operates to destroy or terminate any one or more of the essential unities, and such act effects conversion of the joint tenancy into a tenancy in common and destruction of the right of survivorship."). The analogy is drawn to joint tenancy because, at common law, an individual tenant could not sever a tenancy by the entirety by unilateral act, except by obtaining a divorce. THOMPSON, *supra* note 18, § 33.08(b), at 158. AS 09.38.100(a) differs from the common law by allowing severance of a tenancy by the entirety through the judgment execution process.