Geraldine MAKARKA and John Makarka, individually and as Legal Representatives for the Estates of Christopher Makarka and Brian Makarka, minors; Geraldine Makarka, on behalf of Roy Makarka, a minor; Roy Vanderpool, individually and as a Legal Representative for the Estate of Matilda Vanderpool, Appellants,

v.

GREAT AMERICAN INSURANCE COMPANY, Appellee.

No. S–9230.

Supreme Court of Alaska.

Dec. 22, 2000.

William H. Ingaldson and Jim M. Boardman, Ingaldson Maassen, P.C., Anchorage, for Appellants.

Donald C. Thomas, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Great American Insurance Company refused to defend or indemnify its insured, Chris Callihan, because the "bodily injury" he allegedly caused to the Makarka family by negligently repairing a car occurred after Callihan's policy had been canceled. On appeal from summary judgment in favor of Great American, the Makarka family—now Callihan's successor in interest—claims that coverage for the bodily injury was triggered by either of two events occurring before the policy was canceled: Callihan's negligent repair or property damage that occurred in the course of the repair. But because the policy's language unambiguously required the policy to be in effect when the Makarka family's bodily injuries occurred, not when Callihan committed his negligent acts, we affirm the superior court's summary judgment order.

### II. FACTS AND PROCEEDINGS

On August 27, 1991, Shane Voliva ran a red light with his truck and hit the Makarka family's automobile. The impact killed three passengers and injured two others. Voliva was convicted of criminally negligent homicide. Later, the Makarka family (referred to as Makarka and "he" for convenience) learned that the brakes on Voliva's truck had

been serviced ten months before the accident by Chris Callihan at Ride n Shine, a garage owned by Gerik, Incorporated (Gerik). Makarka then sued Gerik and Callihan.

Gerik tendered a claim for defense or indemnity to Great American, its insurer when Callihan worked on Voliva's brakes, and to Interstate Fire and Casualty, Gerik's insurer when the accident occurred. Great American refused to cover the claim, maintaining that the "occurrence date of plaintiff's injuries [fell] outside of Great American's coverages." Interstate accepted the tender and defended Gerik and Callihan in a wrongful death and personal injury suit, which the parties settled.

As part of the settlement, Callihan confessed judgment and assigned his claim against Great American to Makarka. Relying on Callihan's confession of liability, Makarka then sued Great American, alleging that Callihan's negligent repair of Voliva's brakes had caused bodily injury to Makarka, that the Great American policy was in effect and covered Callihan when he performed the faulty work, and that Great American therefore breached its duty to defend and indemnify Callihan on the underlying claim.

Great American moved for summary judgment. The superior court granted the motion, explaining that the bodily injury that Makarka sustained in the collision was the event that triggered coverage under the terms of the Great American policy and that because the collision occurred after Gerik had canceled the policy, the policy did not cover Makarka's claim. Makarka appeals.

## III. DISCUSSION

### A. Standard of Review

■ Because Makarka stands in the shoes of mechanic Chris Callihan, we must interpret the Great American policy to learn whether it covered Callihan for liability due to Makarka's injury. On cross-motions for summary judgment, the trial court ruled that it did not. This court reviews summary judgment decisions de novo,[1] affirming the decision if there are no genuine issues of material fact bearing on the legal questions presented and if the answers to those legal questions require a decision in favor of the moving party.[2] All factual inferences must be drawn in favor of Makarka, the party opposing summary judgment.[3]

■ When interpreting contract language on appeal, we apply our independent judgment.[4] When the contract is an insurance policy, we pay special attention to four factors: (1) the language of the disputed policy provisions; (2) the language of related provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions.[5]

■ Finally, we treat insurance contracts as contracts of adhesion and construe them to provide coverage that a layperson would reasonably have expected, given a lay interpretation of the policy language.[6] "We therefore resolve ambiguities in the meaning of insurance contracts against the insurer."[7]

### B. Callihan's Coverage for Makarka's Injury

■ To learn whether the Great American policy covered Callihan, we look first to the policy language. Section II.A of the Garage Coverage Form reads:

> We [Great American] will pay all sums an "insured" legally must pay as damages be-

---

**1.** See Moore v. Allstate Ins. Co., 995 P.2d 231, 233 (Alaska 2000).

**2.** See Great American Ins. Co. v. Bar Club, Inc., 921 P.2d 626, 627 (Alaska 1996).

**3.** See Fejes v. Alaska Ins. Co., 984 P.2d 519, 522 (Alaska 1999).

**4.** See Neal & Co., Inc. v. City of Dillingham, 923 P.2d 89, 92 n. 1 (Alaska 1996); Bar Club, 921 P.2d at 627.

**5.** See Cox v. Progressive Cas. Ins. Co., 869 P.2d 467, 468 n. 1 (Alaska 1994).

**6.** See Fejes, 984 P.2d at 522 (quoting INA Life Ins. Co. v. Brundin, 533 P.2d 236, 241 (Alaska 1975)).

**7.** Id.

cause of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations."

Thus, under this coverage term, five conditions must exist before Great American will pay: (1) there must be an accident, (2) resulting from garage operations, (3) that causes an insured to incur legal liability, (4) based on bodily injury or property damage, (5) to which the insurance applies.

Callihan's confession of judgment, in which he admits that he negligently performed repairs to Voliva's brakes at the Ride n Shine garage, creates a genuine issue of material fact regarding the first three elements. And it is undisputed that three members of the Makarka family were killed and two were injured when Voliva's truck hit Makarka's automobile, which satisfies the requirement that there be bodily injury or property damage. Thus, the only coverage element upon which summary judgment against Makarka could be based is whether Makarka's injuries were injuries "to which this insurance applies."

■ That phrase refers the insured to the conditions and exclusions that limit the policy. In particular, Garage Condition provision, part V.B.7, defines the coverage time frame:

Under this Coverage Form, we cover "bodily injury," "property damage" and "losses" occurring:

a. During the policy period shown in the Declarations[.]

Thus, this was an "occurrence" policy. Such policies provide coverage that is based on accidents or events that happen while the policy is in force.[8] Since it is undisputed that Gerik canceled this policy before Makarka's accident, Callihan was not insured against liability stemming from bodily injury occurring in that accident, unless some other, earlier event triggered coverage.

■ As the California Court of Appeals has ruled,

the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged.[9]

Although courts have referred to this explanation as a "general rule," [10] it is merely a restatement of the terms of most occurrence-based liability insurance policies. Like most occurrence policies, the Great American policy is triggered by bodily injury or property damage for which legal damages are due: "[Great American] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage'...." Thus, the proper moment to measure whether coverage is in force is the moment the person seeking damages was injured.

Makarka nevertheless argues that Callihan, by negligently damaging Voliva's brakes, caused property damage while the policy was in force that triggered coverage for all consequential injuries related to the faulty brakes. But Makarka's complaint against Callihan never alleged that Makarka was owed compensation for damage to Voliva's brakes—a claim that properly would have belonged to Voliva. Instead, Makarka's complaint simply alleged that he was owed compensation for bodily injuries caused by Callihan's negligent repair.

Here, bodily injuries for which Makarka sought damages occurred on August 27, 1991. Because Makarka did not own Voliva's truck at the time of repair, he could not show any reasonably ascertainable facts that would give rise to a duty to defend when the Great American policy was still in effect. Since the Great American policy was canceled by April

---

8. Such policies may be distinguished from "claims-made" policies, which insure against liability stemming from any claim brought against an insured, regardless of when the claim accrued. *See* Martin J. McMahon, Annotation, "Event Triggering Liability Insurance Coverage as Occurring Within Period of Time Covered by Liability Insurance Policy Where Injury or Damage Is Delayed—Modern Cases," 14 ALR 5th 695, 721–22 § 2[a] (1993).

9. *Remmer v. Glens Falls Indem. Co.*, 140 Cal. App.2d 84, 295 P.2d 19, 21 (1956) *cited in Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, 890 (1995).

10. *See Montrose Chemical*, 42 Cal.Rptr.2d 324, 913 P.2d at 890.

1, 1991, Great American did not owe Callihan either a defense or indemnity for liability stemming from an accident in August.

Makarka points out, however, that courts have carved out exceptions to the date-of-occurrence rule where the words "occurrence" and "accident" introduce ambiguity into a policy's terms [11] and argues that this case should also be excepted. In particular, Makarka cites *Insurance Company of North America v. Sam Harris Construction Company*.[12] Because the reasons driving the cases Makarka cites are not present here, we decline to follow them.

*Sam Harris* interpreted a policy that indemnified its insured for injury or destruction of property "arising out of" aircraft maintenance, but that limited itself to "occurrences or accidents which happen during the policy period."[13] The *Sam Harris* court ruled that because the policy failed to define the term "occurrence," it had to be read broadly to include "events" and "incidents," including "negligent repairs that do not cause immediate injury but do result in a later accident."[14] Therefore, the court ruled that the insurer had a duty to defend the insured against a claim based on injury occurring after the policy was canceled if the negligence occurred while the policy was in force.[15]

The reasoning in *Sam Harris* does not apply here because the Great American policy is not triggered by an "occurrence" or "accident." When used in a policy without further definition, these nouns can sometimes create ambiguity, since, when negligence and consequent injury occur separately, "occurrence" and "accident" might refer to either the incident in which the negligence occurred or the incident in which the injury was suffered. But the Great American policy avoids this potential ambiguity by specifying precisely what must occur and when it must occur: under the policy, the triggering events of coverage are " 'bodily injury,' 'property damage' and 'losses' occurring . . . [d]uring the policy period."

We find nothing ambiguous in this phrasing. "Occurring" is the present participle of the verb "to occur," which means to "come to pass[,] take place[, or] happen." [16] Thus, the durational restriction in the Great American policy plainly limits coverage to cases in which "bodily injury," "property damage," or "losses" "come to pass," "take place," or "happen" during the policy period. This language cannot reasonably be read as a reference to negligent acts that predate the occurrence of injury.

The word "accident" is also unambiguous as used in the Great American policy. The policy's coverage grant reads:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies *caused by an "accident"* and resulting from "garage operations."

(Emphasis added.) In this sentence, the events that trigger coverage are bodily injuries and property damage, not accidents. The phrase "caused by an accident" appears in the coverage term to ensure that only injuries that are "not anticipated" are insured.[17] As a modifier, rather than a triggering event, "caused by an accident" is unambiguous.

Here, it is undisputed that Makarka's injuries were caused by an "accident." The problem is that the accident causing these bodily injuries occurred long after Callihan performed his faulty work on Voliva's brakes

---

**11.** *See Insurance Co. of North America v. Sam Harris Constr. Co.,* 22 Cal.3d 409, 149 Cal.Rptr. 292, 583 P.2d 1335, 1336–37 (1978); *Sylla v. United States Fidelity & Guar. Co.,* 54 Cal.App.3d 895, 127 Cal.Rptr. 38, 40–41 (1976).

**12.** 583 P.2d at 1335.

**13.** *Id.* at 1336.

**14.** *Id.* at 1337.

**15.** *See id.*

**16.** Webster's New International Dictionary of the English Language Unabridged 1561 (3d ed.1969).

**17.** *See Fejes v. Alaska Ins. Co.,* 984 P.2d 519, 523 (Alaska 1999) (defining "accident" as "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected" (quoting *INA Life Ins. Co. v. Brundin,* 533 P.2d 236, 242 n. 23 (Alaska 1975))).

and long after the Great American policy was canceled. And Makarka fares no better if Callihan's negligent work is viewed as an "accident," since the property damage caused by that "accident" is not the damage at issue in Makarka's complaint.

█ Thus, unlike the language contained in the policies in *Sam Harris* and the other cases cited by Makarka, the language of the Great American policy is not ambiguous. Since the date of policy cancellation and the date of Makarka's accident were not disputed, a reasonable insured [18] would not expect coverage for that accident under this policy. The superior court appropriately ordered summary judgment on the coverage question.

### C. Duty to Defend

█ Makarka contends that Callihan's tender of the lawsuit defense to Great American created a reasonable expectation of coverage that required Great American to provide a defense. Our duty-to-defend cases have established that where "vagaries [of] law and fact" are sufficient to create the potential that an insured will incur covered liability, the insurer must defend [19] and that failure to defend gives rise to an indemnity remedy, even if it could later be proved that no coverage was due.[20] The potential for coverage may be shown either on the face of the complaint or through facts the insurer knew or could have reasonably ascertained that would bring an otherwise uncovered complaint within the policy's coverage.[21]

Here, Makarka's complaint presents no factual ambiguity regarding coverage, nor does Makarka point to facts outside the complaint that could have formed a factual basis for coverage. The complaint alleged negligent repair of Voliva's brakes during the policy term and an accident, due in part to brake failure, outside the policy term. No claim was made for damage to Voliva's brakes. Thus, Gerik tendered a claim to Great American for bodily injury that occurred after Gerik had canceled the Great American policy. Further, Makarka points to no extrinsic fact outside the complaint that would have brought Makarka's claim under the policy. He does claim that there was ambiguity about the "degree of property damage" to Voliva's brakes, but since Makarka made no claim for property damage to Voliva's brakes, any dispute over that fact is immaterial to the issue of coverage.

█ A duty to defend may also exist where the resolution of a contested legal question may lead to covered liability against the insured. But a duty to defend does not arise whenever an insurer and an insured have a dispute over coverage. In *O'Neill Investigations, Inc. v. Illinois Employers Insurance of Wausau,*[22] we heard a case of first impression regarding an insurer's duty to defend the insured against the state's suit for injunctive relief, civil penalties, and an order "for restoration to individuals of monies or property acquired by defendants as the result of conduct complained of" under the Consumer Protection Act.[23] Because the state's complaint did "not allege a 'negligent act, error, or omission' or 'seek damages,' "[24] the insurer refused to provide O'Neill with a full defense.[25] O'Neill, on the other hand,

---

18. Makarka points to evidence that Gerik submitted a claim to Great American as evidence that Gerik and Callihan had a reasonable expectation of coverage under the Great American policy. The mere submission of a claim is insufficient to raise a genuine issue of material fact regarding an expectation of coverage, particularly in light of the unambiguous policy language in this case.

19. *Continental Ins. Co. v. United States Fidelity & Guar. Co.,* 528 P.2d 430, 435 (Alaska 1974).

20. *See Theodore v. Zurich General Accident & Liab. Ins. Co.,* 364 P.2d 51, 55–56 (Alaska 1961).

21. *See State, Dep't of Transp. and Pub. Facilities v. State Farm Fire & Cas. Co.,* 939 P.2d 788, 792 n. 1 (Alaska 1997).

22. 636 P.2d 1170 (Alaska 1981).

23. *Id.* at 1174 (internal quotation marks omitted).

24. *Id.*

25. The insurer had offered to fund 50% of O'Neill's defense as a compromise. *Id.* at 1172.

argued that there was "an ambiguity as to whether restitutionary relief such as that sought by the state constitutes 'damages' within the intended coverage of the policy." [26]

In *O'Neill,* as here, we considered the policy language and the undisputed facts of the case and found that because the policy did not provide coverage for the claims alleged against the insured, the insurer was correct in its assertion that it had no duty to defend the claim.[27] We then extended our analysis to be certain that a reasonable insured would expect neither coverage nor a defense under the policy.[28] Finding that a reasonable lay interpretation of the policy would not encompass coverage under the circumstances, we found no ambiguity, no coverage, and therefore no duty to defend.

As *O'Neill* established, where coverage turns solely on the interpretation of policy language that has never been reviewed by this court, that fact alone is not enough to create a possibility of coverage that required a defense. Given the level of scrutiny directed at an insurer's decision not to provide coverage, insurers who accurately interpret their policies and give their insureds timely notice of the reason why there is no coverage are not required to provide a defense merely because we have yet to interpret that particular policy language.[29]

Here, Great American's denial letter assessed Makarka's claim for bodily injury and accurately explained that the injury occurred outside of the period covered under the Great American policy. Thus, the superior court correctly granted Great American summary judgment on the question of whether it had a duty to defend Callihan.[30]

**26.** *Id.* at 1174.

**27.** *See id.* at 1175.

**28.** *See id.* at 1175–77.

**29.** Of course, insurers who misinterpret their policies or who refuse to defend their insureds in the face of a reasonable expectation of coverage

## IV. CONCLUSION

The superior court's grant of summary judgment is AFFIRMED.

EASTAUGH, Justice, not participating.

do so at the risk of indemnifying any loss due to claims they should have defended. *See Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 646–47 (Alaska 1979).

**30.** Because we hold that there was no duty to defend, we need not reach the issue of what remedy would be due if that duty existed.