929 So.2d 729 (2006)
DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, Appellant,
v.
BEACH CARS OF WEST PALM, INC., a Florida corporation, and Christina Jackson, Appellees.
No. 4D04-4675.
District Court of Appeal of Florida, Fourth District.
May 31, 2006.
*730 Jeffrey A. Blaker and Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., West Palm Beach, for appellant.
Jane Kreusler-Walsh and Barbara J. Compiani of Jane Kreusler-Walsh, P.A., and Andrew M. Pelino of Burman, Critton, Luttier & Coleman, West Palm Beach, for appellee Beach Cars of West Palm, Inc.
SWEET, GARY L., Associate Judge.
In this case, we review the trial court's judgment obligating an insurer to cover its insured for an incident which occurred after the policy's expiration date. Because the applicable coverage language did not expressly state the covered loss must occur during the policy period, the lower court found the policy ambiguous, construed its language against the insurer, and found coverage. We affirm and write this opinion for two reasons: 1) to once again make clear that insurers must clearly write in their policies what they mean if they wish to avoid findings of ambiguity; and 2) to address Appellant's argument that an affirmance would cause an absurd and unreasonable result.

FACTS
In December 2001, Beach Cars of West Palm Beach, Inc. ("Beach Cars") sold a 1994 Ford Explorer, which was involved in an accident in 2003. The rear seat passenger was injured, and she sued Beach Cars under various legal theories based upon the alleged failure of her seat belt. Beach Cars looked to its insurer, Discover Property and Casualty Insurance Company ("Discover"), to provide a defense against the suit and coverage for any resulting liability. Discover provided Beach Cars a defense pursuant to a reservation of rights and then instituted a declaratory judgment action regarding its obligations to defend and indemnify Beach Cars. The insurance policy that Discover issued to Beach Cars included the following provisions:
GARAGE COVERAGE FORM
....
SECTION II  LIABILITY COVERAGE
A. Coverage
"GARAGE OPERATIONS"  OTHER THAN COVERED "AUTOS"
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, *731 maintenance or use of covered "autos".
....
"GARAGE OPERATIONS"  COVERED "AUTOS"
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".
....
SECTION V  GARAGE CONDITIONS
The following conditions apply in addition to the Common Policy Conditions:
....
B. General Conditions
....
7. Policy Period, Coverage Territory
Under this Coverage Form, we cover:
a. "Bodily injury", "property damage" and "losses" occurring; and
b. "Covered pollution cost or expense" arising out of "accidents" occurring during the policy period shown in the Declarations and within the coverage territory.
....
SECTION VI  DEFINITIONS
A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".
....
C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
....
F. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.
The policy was effective from March 17, 2001, to March 17, 2002  a time frame that encompassed the insured's sale of the vehicle, but not the date of the injury-causing collision.
Both parties moved for summary judgment. Discover insisted there was no duty to defend or indemnify because the coverage afforded pursuant to the "Garage Coverage Form" was limited to liability for "bodily injury," "property damage" and "losses" occurring during the policy's effective dates and the relevant bodily injuries were not sustained until nearly two years after the policy's expiration. This argument was predicated upon the language quoted above in section V(B)(7).
Beach Cars also filed a motion for summary judgment, insisting Discover had a duty both to defend and to indemnify. Beach Cars argued the policy was ambiguous as to whether the bodily injury must be sustained during the policy period to trigger coverage. Specifically, Beach Cars argued that neither section II, defining the scope of the coverage, nor section VI, defining "bodily injury" and "accident," provided the accident or bodily injury had to take place during the policy period to trigger coverage.
*732 The lower court reasoned "there [was] a need to indicate in paragraph 7 sub. (a) that [bodily injury] must occur during the policy period" and entered final judgment in favor of the insured. This appeal followed.

ANALYSIS

A. Standard of Review
Because this case involves the construction of an insurance contract, which is a question of law, the scope of our review is de novo. Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26, 29 (Fla. 2d DCA 2004).

B. Discussion
Contracts, if written clearly and without ambiguity, are to be considered and interpreted as written. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005). Such contractual language should be given its plain and ordinary meaning, and read in the context of the document as a whole. Gen. Star Indem. Co., 874 So.2d at 30. If possible, conflicting provisions of a contract are to be read in such a way as to give a reasonable interpretation and effect to all provisions. Cont'l Ins. Co. v. Collinsworth, 898 So.2d 1085, 1087 (Fla. 5th DCA 2005).
In the event policy provisions are ambiguous and cannot be reasonably reconciled, then well-established rules of construction must be applied. Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 735 (Fla.2002). The most basic of these rules is that ambiguous policy provisions are to be construed in favor of the insured and against their drafter, the insurer. Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla. 2d DCA 1997). Such a construction most typically will result in a finding of coverage. Farrer v. U.S. Fid. & Guar. Co., 809 So.2d 85, 88 (Fla. 4th DCA 2002).
In considering Appellant's argument, it is significant to note the primary cases on which it relies are instructive as to how an insurer should have drafted the policy language in this case. For example, it cites Makarka ex rel. Makarka v. Great American Insurance Co., 14 P.3d 964 (Alaska 2000), for the proposition that coverage may arise only if the triggering event occurs during the policy period. However, in that case, a summary judgment finding no coverage was affirmed "because the policy's language unambiguously required the policy to be in effect when ... bodily injuries occurred, not when [the insured] committed his negligent acts." Id. at 965. We decline to write in policy language that Appellant has chosen to omit.
Similarly, Appellant cites Travelers Insurance Co. v. C.J. Gayfer's & Co., 366 So.2d 1199 (Fla. 1st DCA 1979), because it notes that insurance contracts are usually not intended to be open ended. Again, Appellant overlooks policy language in that case which defined property damage as follows:
The term "property damage" means the physical injury to or destruction of tangible property which occurs during the policy period ..., or (2) loss of use of tangible property ... provided such loss of use is caused by an occurrence during the policy period.
Id. at 1201 n. 1. As in Makarka, the insurer in Gayfer's inserted language expressing its intentions. We cannot, under the guise of contract construction, supply language which the insurance company did not include.
Finally, Appellant unsuccessfully attempts to deflect the clear implication of Aetna Insurance Co. v. State Farm Fire & Casualty Co., 457 So.2d 512 (Fla. 1st DCA 1984). In Aetna, the court determined *733 that a factual question existed as to whether language on a policy jacket was to be read as part of the insurance contract. The language on the jacket was significant because it defined "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period." Id. at 513 n. 2. In remanding, the court stated if the jacket language was not determined to be part of the express contract of insurance, it would not be implied into the policy and coverage would exist.
Although no case directly on point has been cited or found, the cases seem to speak harmoniously. If an insurer wishes to restrict coverage for incidents or circumstances which occur during the policy period, it is free to expressly say so. If it chooses not to, and thereby creates an ambiguity, it cannot later deny coverage claiming it would be exposed to unreasonable risks and absurd results.
In this regard, the ambiguous nature of the policy is highlighted by the insurer's language in the "Broadened Coverage  Garage" policy endorsement, which clearly provides coverage for both personal injury and advertising injury which arise from "an offense committed ... during the Policy Period." This language makes clear the insurer's ability to expressly address a condition of coverage that it wishes us to read in as a matter of contract construction and interpretation.
In this case, Appellant has forcefully argued that an affirmance could expose it to liability for occurrences "whether they occurred 100 years prior to the policy period and coverage [would continue] until the end of time." It argues that such a result would be absurd and unreasonable. Admittedly, such an argument presents initial concern. However, after carefully reviewing the cases cited in its support and the policy language, we find the argument illusory, and it must yield to the firmly-grounded and well-established rules of contract construction.
Interestingly, the cases Appellant cites in support of its argument, United States Fire Insurance Co. v. Pruess, 394 So.2d 468 (Fla. 4th DCA 1981), and Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co., 711 So.2d 1135 (Fla.1998), state that policies should be interpreted reasonably, not absurdly, and consistent with the parties' intent. However, in those cases, the parties' intent was clear from the language itself  there were no ambiguities. Unlike this case, the drafter's intent did not have to be divined and inserted through judicial decree.
In addition, a close reading of the policy makes clear that Appellant's feared "absurd result" is extremely remote and unlikely to occur. Even as written and interpreted by the trial court, coverage under the policy at issue must be triggered not only by an "accident," but also one "resulting from `garage operations,'" which is what happened in this case. The fear that such circumstances could coalesce at a time so distant in time from the policy period to be unreasonable is not real or persuasive enough to justify disregarding well-established rules of construction and legal authority. For these reasons, the judgment of the lower court is affirmed.
Affirmed.
WARNER and MAY, JJ., concur.