MAY, J.
 

 The plaintiff appeals an adverse declaratory judgment in favor of an insurer. Specifically, the trial court found that the professional services exclusion of a business owner’s policy excluded coverage for services performed by the doctor’s wife in filing, and making the doctor aware of, lab reports. The trial court also found the insurer had a duty to defend. From the latter finding, the insurer filed a cross-appeal. We affirm.
 

 The doctor is a pediatrician. He employed his wife in the office.
 
 [1]
 
 Her duties included the filing of lab reports in the patient’s chart and providing them to the doctor for review.
 

 The decedent was the doctor’s patient. The doctor diagnosed him as obese and having high blood pressure. An outside lab performed tests on the decedent, revealing abnormal values. In February, 2005, the lab mailed the abnormal test results to the doctor, who testified that his office usually receives reports within one or two days after blood is drawn. Yet, the first time he remembered seeing the lab results was three months later in May, 2005. The decedent died on June 2, 2005. The doctor opined that if he had seen the lab report earlier, he would have taken different actions in his treatment of the decedent.
 

 The plaintiff brought a wrongful death action against the doctor, his only employee, and his professional association. The plaintiff alleged medical malpractice against the doctor and general negligence against the employee. The doctor and his employee requested coverage under the insurer’s business owner’s policy.
 
 [2]
 
 The in
 
 *1235
 
 surer refused to defend or indemnify the doctor and his employee based on the exclusion for injuries arising from professional services. That exclusion provided:
 

 This insurance does not apply to:
 

 [[Image here]]
 

 j. Professional Services
 

 “Bodily injury,” “property damage,” “personal injury” or “advertising injury” due to rendering or failure to render any professional service. This includes but is not limited to:
 

 [[Image here]]
 

 (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
 

 (5) Any health or therapeutic service treatment, advice or instruction....
 

 The insurer claimed that misfiling the lab results fell within the professional services exclusion because it was an “intricate part” of the medical services the doctor rendered. The plaintiff claimed, however, that the employee’s negligence was not excluded because her services were clerical, as she had no professional responsibility to read or interpret the lab reports.
 

 The insurer refused to defend the wrongful death action. The doctor and his employee entered into a $5,000,000 consent judgment with the plaintiff.
 
 [3]
 
 As part of the settlement, they assigned their coverage claims to the plaintiff. The plaintiff then brought an action against the insurer alleging that the insurer breached its duties to defend and indemnify the employee and the P.A.
 

 The trial court denied the parties’ cross-motions for summary judgment, and conducted a non-jury trial. The trial focused on whether the employee provided professional services within the meaning of the policy’s exclusion. The plaintiff argued that the employee merely provided clerical services. The insurer maintained that the allegations against the employee involved the rendering of professional services.
 

 The employee testified that she performed various clerical jobs for the doctor, which included opening the office, checking the mail, making appointments, setting up charts, and answering the phone. She did not examine patients, give medical advice, or interpret lab reports. However, she was a nurse by training and had been employed by the Philippine government as a military nurse; she was not licensed in the State of Florida. She took vital signs and wrote them in the patient’s chart. She received lab reports and clipped them to the outside cover of the patient’s chart. She never provided nursing treatment, advice, or instruction to the decedent. She testified that when she received abnormal test results, she put them with the patient’s chart on her husband’s desk. She prioritized the results so that the most serious results were on the top.
 

 
 *1236
 
 The doctor testified that he sometimes employed medical assistants, but none of them had any particular skill or training. He hired his wife to assist with his clerical and billing needs; not as a medical assistant. She never made clinical, medical, or professional decisions.
 

 The defendant’s expert testified that “professionals” require specialized skill, and no specialized training is required to give lab reports to a doctor. In response, the insurer argued that the employee acted as a medical assistant because she operated medical equipment and performed functions that were the tasks of a professional medical assistant under section 458.3485, Florida Statutes (2007).'
 
 [4]
 

 The insurer further argued that the employee’s duties formed an “intricate part” of the medical services provided by the doctor, as she was his only employee in 2005. When she took a patient’s vital signs, the doctor relied on the information, which was critical to his diagnosis. Without her help, he would have to do everything himself.
 

 In a letter to the attorneys following the trial, the trial court tentatively concluded there was a duty to defend, but that the coverage issue “boil[ed] down to whether one looks at the matter as a package of medical treatment or whether each employee’s acts are separated out.” The court thought the employee performed both clerical and professional acts. Specifically, her responsibility to provide the doctor with the lab results involved a clerical act and an aspect of medical treatment.
 

 The trial court ultimately concluded the insurer had a duty to defend the wrongful death claims based on the allegation that the employee was a non-professional employee. However, the trial court found the insurer had no duty to indemnify because the professional services exclusion applied. The court found the alleged negligence was either the failure of the doctor to review the results or the failure of the employee to furnish the report to him. Either failure culminated in the doctor’s professional judgment that resulted in the decedent’s death. The trial court was not “inclined to ‘unbundle’ the acts which are part of providing medical services and put one act under a legal microscope.”
 

 The standard of review of an order interpreting an insurance policy is de novo.
 
 Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.,
 
 929 So.2d 729, 732 (Fla. 4th DCA 2006).
 

 Our interpretation of insurance policy provisions is guided by a few well-recognized rules. An insurance policy’s coverage is defined by the plain language of the policy.
 
 Fayad v. Clarendon Nat’l Ins. Co.,
 
 899 So.2d 1082, 1086 (Fla.2005). Clear and unambiguous terms are enforced as written.
 
 Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,
 
 913 So.2d 528, 532 (Fla.2005). When the provisions are susceptible to two reasonable interpretations, the one providing coverage prevails.
 
 Id.
 
 Coverage clauses are broadly construed.
 
 Union Am. Ins. Co. v. Maynard,
 
 752 So.2d 1266, 1268 (Fla. 4th DCA 2000). Exclusionary clauses are strictly con
 
 *1237
 
 strued.
 
 Id.
 
 With these tenets in mind, we construe the policy at issue.
 

 First, we find that the policy language is unambiguous. The professional services exclusion excludes coverage for “ ‘[b]odily injury,’ ‘property damage,’ ‘personal injury5 or ‘advertising injury5 due to rendering or failure to render any professional services.... ” Professional services include “but [are] not limited to ... [m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction.” Employees are not insured for ‘“[b]odily injury’ or ‘personal injury’ ... [ajrising out of his or her providing or failing to provide professional health care services.”
 

 The plaintiff argues that the policy’s failure to define professional services renders the policy susceptible to more than one interpretation. We disagree. The policy clearly excludes coverage for claims “arising out of’ the providing or failing to provide professional services and claims “due to” the rendering or failing to render any professional service. Professional services include medical or nursing services.
 

 Second, we find, as did the trial court, that the employee’s acts were causally connected to the professional services rendered by the doctor. The policy clearly excludes medical services, and the employee’s duties were an “intricate part” of the medical services provided by the doctor.
 

 The plaintiff argues that because the employee’s act of opening the mail and attaching a lab report required no professional skill, her acts are not excluded from coverage.
 
 See Aerothrust Corp. v. Granada Ins. Co.,
 
 904 So.2d 470, 472 (Fla. 3d DCA 2005) (holding that a professional services exclusion did not apply because the services were rendered by employees who were “not required to have any specialized training or experience”). However, “[wjhether an act results from the nature of a professional service is determined by focusing upon the particular act itself, as opposed to the character of the individual engaging in the act.”
 
 Lindheimer v. St. Paul Fire & Marine Ins. Co.,
 
 643 So.2d 636, 638 (Fla. 3d DCA 1994).
 

 We find
 
 Alpha Therapeutic Corp. v. St. Paul Fire & Marine Insurance Co.,
 
 890 F.2d 368 (11th Cir.1989), instructive. There, the Eleventh Circuit held that a medical technician’s error in transcribing test results was an error in performing a professional service.
 

 Even if a medical technician is not a professional, there are certain professional duties that, when delegated to the medical technician, bring the technician within the definition of “professional” for insurance purposes....
 

 Indeed, most professional services involve clerical duties that may lead to liability. While these duties typically are performed by a secretary or assistant, the professional is ultimately responsible for the duty.... While transposing the test results may be a clerical task, if the test results are transposed improperly, the testing process fails. Clearly, transposing test results and figures is an intricate part of testing plasma for hepatitis, which is a professional service. Thus, this court finds that the medical technician was performing a professional service when the error in question occurred. As such, the liability is excluded from coverage by the professional service exclusion clause....
 

 Id.
 
 at 370-71.
 

 We also agree with the trial court’s finding that the employee was a medical assistant under section 458.3485, Florida Statutes (2007). A “Medical Assistant” is defined as a
 
 “professional
 
 multiskilled person dedicated to assisting in all aspects of medical practice under the direct supervi
 
 *1238
 
 sion and responsibility of a physician.” § 458.3485, Fla. Stat. (emphasis added). Here, the employee assisted the doctor in all aspects of his practice. She not only performed clerical tasks, but she took vital signs: temperature, pulse, height, blood pressure, and weight. By finding that the employee was a medical assistant, the court found that she was a professional and her duties included the rendering of professional services. Thus, she fell within the policy’s professional services exclusion.
 

 On cross-appeal, the insurer argues the trial court erred in finding that it had a duty to defend. Once again, the trial court got it right. “An insurer’s duty to defend is distinct from and broader than its duty to indemnify'.”
 
 Keen v. Fla. Sheriffs’ Self-Ins. Fund,
 
 962 So.2d 1021, 1024 (Fla. 4th DCA 2007). The duty to defend is determined solely by the allegations in the complaint, which must set forth facts that bring the case within the coverage of the policy.
 
 McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass’n,
 
 758 So.2d 692, 695 (Fla. 4th DCA 1999). “[A]ny doubt about the duty to defend must be resolved in favor of the insured.”
 
 Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.,
 
 771 So.2d 579, 580-81 (Fla. 4th DCA 2000).
 

 The complaint in this case specifically alleged facts that fell within the insuring language of the policy. It alleged that in a non-professional manner, the employee negligently:
 

 a) made clerical mistakes in the filing of significant laboratory results for STEVEN TINERVIN;
 

 b) lost, misplaced or untimely filed significant laboratory results for STEVEN TINERVIN;
 

 c) failed to forward or show the laboratory results of STEVEN TINERVIN to her husband, Dr. Gonzales;
 

 d) read the previously obtained laboratory results during the May 2005 office visit and negligently told the physician that they were normal; and
 

 e) was otherwise negligent in her nonprofessional office duties owed to STEVEN TINERVIN.
 

 These allegations squarely fell within the policy’s duty to defend. It was only after the facts were flushed out in discovery that the duty to indemnify was found not to exist.
 

 Affirmed.
 

 DAMOORGIAN and CIKLIN, JJ, concur.
 

 [1]
 

 . His wife will be referred to as the employee throughout the opinion.
 

 [2]
 

 . The policy's insuring language contained the following relevant provisions:
 

 A. Coverages
 

 
 *1235
 
 1. Business Liability
 

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury,” "property damage,” "personal injury" or "advertising injury” to which this insurance applies. We will have the right and duty to defend the insured against any "suit” seeking those damages....
 

 [[Image here]]
 

 C. Who is an Insured
 

 Each of the following is also an insured:
 

 a. Your "employees,” other than either your "executive officers” ..., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees” is insured for:
 

 (1) "Bodily injury" or "personal injury”:
 

 [[Image here]]
 

 (d) Arising out of his or her providing or failing to provide professional healthcare services ....
 

 [3]
 

 . The medical malpractice claim against the doctor was settled after the medical malpractice carrier paid the policy limits.
 

 [4]
 

 . A medical assistant is defined as "a professional multiskilled person dedicated to assisting in all aspects of medical practice under the direct supervision and responsibility of a physician. This practitioner assists with patient care management, executes administrative and clinical procedures, and often performs managerial and supervisory functions. Competence in the field also requires that a medical assistant adhere to ethical and legal standards of professional practice, recognize and respond to emergencies, and demonstrate professional characteristics.” § 458.3485(1), Fla. Stat.