*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EKATERINA V. POUZANOVA, | ) | |
| | ) | Supreme Court No. S-14442 |
| Petitioner, | ) | |
| | ) | Superior Court No. 3AN-10-08545 CI |
| v. | ) | District Court No. 3AN-08-11802 CI |
| | ) | |
| KUUIPO T. MORTON, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 6915 - June 20, 2014 |
| | ) | |

Petition for Hearing from the Superior Court of the State of Alaska, Third Judicial District, Kodiak, Steve W. Cole, Judge, on appeal from the District Court for the State of Alaska, Anchorage, John R. Lohff, Judge.

Appearances:  David S. Carter, Hughes, Gorski, Seedorf, Odsen & Tervooren, LLC, Anchorage, for Petitioner. Allison Mendel and Laurence Blakely, Mendel & Associates, Anchorage, for Respondent.

Before:  Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

This case, arising out of a traffic accident, comes to us on a petition for hearing from a decision of the superior court, acting as the intermediate appellate court following a trial in district court.  The superior court reversed the district court judgment and remanded the case for a new trial.  We agree with the superior court that a remand

is in order because certain evidence of domestic violence should have been excluded under Alaska Evidence Rule 403. On two other issues, however, we reverse the superior court's decision and hold that the district court was correct: it correctly dismissed the plaintiff's punitive damages claim and correctly declined to require that the plaintiff's husband be joined as a third-party defendant.

## II.     FACTS AND PROCEEDINGS

On May 26, 2008, Ekaterina Pouzanova drove past a stop sign and into an intersection in Anchorage and was broad-sided by a vehicle driven by Kuuipo Morton. Morton went to the emergency room and was diagnosed with lower back pain and a possible compression fracture. She continued to complain of pain in her back and neck in the months that followed, and she received some additional treatment for these complaints.

Pouzanova did not contest liability for the accident, but she did dispute the extent of Morton's injuries. Morton sued in district court for non-economic and punitive damages. She initially included claims for lost earnings and medical expenses as well but dropped them before trial. The district court dismissed the punitive damages claim on summary judgment, finding that the evidence could not support a finding of recklessness.

During jury selection, Morton challenged three potential jurors for cause. The court declined to excuse the jurors, and Morton used three of her four peremptory challenges to replace them. During trial the court allowed testimony about domestic violence in Morton's marriage as relevant to her claim for loss of enjoyment of life, including evidence of an incident in which she allegedly threatened her husband with a hammer. The jury returned a verdict of $5,000 for past non-economic loss and zero for future non-economic loss. Because Morton had earlier rejected an offer of judgment

under Civil Rule 68, the amount of attorney's fees and costs assessed against her more than offset the amount of the verdict in her favor.

Morton appealed to the superior court, which vacated the judgment and remanded the case for a new trial. The superior court found reversible error in the district court's grant of summary judgment on the punitive damages claim; its refusal to grant the challenges for cause during jury selection; its failure to require the joinder of Morton's husband as a third-party defendant for purposes of allocation of fault; and its admission of evidence of the domestic violence incident involving the hammer.

Pouzanova filed a petition for hearing, which we granted.

## III.   STANDARDS OF REVIEW

In an appeal from a judgment of a superior court acting as an intermediate court of appeal, we independently review the judgment of the district court.[1]

"We review summary judgment decisions de novo, affirming if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[2] We draw all factual inferences in favor of the non-moving party.[3]

Although we ordinarily review the decision whether someone is an indispensable party for an abuse of discretion,[4] the decision in this case depends upon the

---

[1]     *Smith v. Kofstad*, 206 P.3d 441, 444 (Alaska 2009) (quoting *Hallam v. Holland Am. Line, Inc.*, 27 P.3d 751, 753 (Alaska 2001)).

[2]     *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (citing *Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 966 (Alaska 2000)).

[3]     *Id.* (citing *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267, 269 (Alaska 2005)).

[4]     *Tlingit-Haida Reg'l Elec. Auth. v. State*, 15 P.3d 754, 768 n.48 (Alaska 2001).

interpretation of a statute, which we decide de novo.[5] A superior court's decision whether to admit evidence under Evidence Rule 403 requires it to balance the probative value of the evidence against its unfair prejudice; we review this balancing for abuse of discretion.[6]

## IV. DISCUSSION

### A. The District Court Properly Dismissed The Punitive Damages Claim On Summary Judgment.

Before trial, Pouzanova moved for summary judgment on the issue of punitive damages. The district court granted the motion on grounds that there was insufficient evidence that Pouzanova had acted with recklessness rather than mere negligence. Awards of punitive damages require proof by "clear and convincing evidence" that the defendant's conduct "was outrageous, including acts done with malice or bad motives," or that it "evidenced reckless indifference to the interest of another person."[7] The superior court reversed the district court's dismissal of the claim, holding that the sworn statements of two witnesses, while "very minimal" evidence, were enough to create an issue of fact for the jury as to whether Pouzanova saw the stop sign and intended to run it. We do not view these statements as sufficient to distinguish this case from *Hayes v. Xerox Corp.*,[8] in which we affirmed a grant of summary judgment on a punitive damages claim. We conclude, therefore, that the district court correctly dismissed the claim.

---

[5] *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014).

[6] *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007).

[7] AS 09.17.020(b).

[8] 718 P.2d 929, 934-36 (Alaska 1986).

One of the statements was provided by Pouzanova's passenger, who said, "I don't know why or what happened, but she blew right through the stop sign and then we got T-boned. . . . Oh, it was straight through . . . like there wasn't even a stop sign there or an intersection . . . ." The other statement was from a driver who was approaching the intersection behind Pouzanova. He said, "It looked to me like maybe she was trying to jump across to get across the street before the other car came or maybe she didn't stop, I'm not sure, like I said, as I pulled up . . . she was already going or trying to go across."

Morton also contends that two statements made by Pouzanova herself support a finding of recklessness. First, Pouzanova told her insurance company several days after the accident, "There was a stop sign, yeah. The thing is I don't remember what exactly happened, but witnesses say that [indiscernible] that I did stop, but I — honestly I don't remember." At her later deposition, Pouzanova denied that she had ever made a statement to her insurance company about the accident; she also stated that she believed that she did not see the stop sign because the sun was in her eyes.

In *Hayes*, a case much like this one, we articulated the showing that must be made before a plaintiff may recover punitive damages:

> [T]he plaintiff must prove that the wrongdoer's conduct was outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another. Actual malice need not be proved. Conscious action in deliberate disregard of [others] . . . may provide the necessary state of mind to justify punitive damages. If the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual

malice, then the trial court need not submit the issue of punitive damages to the jury.[9]

We noted in *Hayes* our approval of the Restatement's definition of "reckless disregard of the safety of another."[10] We adopted the comments' description of recklessness in the factual context presented here:

> It is reckless for a driver of an automobile *intentionally* to cross a through highway in defiance of a stop sign if a stream of vehicles *is seen* to be closely approaching in both directions, but if his failure to stop is due to the fact that he has *permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless*.[11]

The plaintiff in *Hayes* argued that recklessness was an issue for the jury because there was evidence that the defendant was familiar with local streets and traffic signals and that he had failed to "look for traffic as he approached the intersection," to brake, or to "look for the traffic signal due to lapse of concentration."[12] After reviewing this evidence in

---

[9]    *Id.* at 934-35 (citations omitted) (internal quotation marks omitted).

[10]    *Id*. at 935 n.5.  RESTATEMENT (SECOND) OF TORTS § 500 (1964) provides:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

[11]    *Hayes*, 718 P.2d at 935 (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 500 cmt. b).

[12]    *Id.*

light of the Restatement definitions, we concluded that it "did not present genuine issues of material fact nor give rise to an inference of conduct amounting to reckless indifference to the rights of others."[13]

Pouzanova contends that in this case, as in *Hayes*, there is insufficient evidence of reckless intent. Morton counters that unlike the plaintiff's claim in *Hayes*, which was based on the defendant's failure to see a stop light, her claim is that Pouzanova saw the stop sign and chose to run it. She argues that the two witness statements and Pouzanova's arguably conflicting recollections raise a genuine issue as to whether Pouzanova saw the sign.

We conclude, however, that the district court did not err when it found that this evidence was insufficient to support a finding of recklessness. The statement of Pouzanova's passenger supports only the undisputed proposition that she drove through the stop sign; it says nothing about her state of mind when she did so. The second witness, who was coming up behind Pouzanova at the intersection, was in an even worse position to speculate on Pouzanova's intent. In fact, he testified that she was already proceeding into the intersection when he noticed her car ahead of him, and he did not even know whether she had stopped at the stop sign. We also do not accept that Pouzanova's post-accident statements, in which she first disclaimed any recollection of the accident and then speculated that the sun must have been in her eyes, can reasonably be construed as admissions that she saw the stop sign at the time.

In sum, there is no evidence of recklessness that would meaningfully distinguish this case from *Hayes*. We hold, therefore, that the district court correctly granted summary judgment to Pouzanova on Morton's punitive damages claim.

---

[13]     *Id.* at 936.

**B.** **The District Court Properly Declined To Require The Joinder Of Morton's Husband For Purposes Of Allocation Of Fault.**

Morton brought a motion in limine before trial that sought, among other things, to exclude any evidence "blaming [Morton's husband] for causing any of Mrs. Morton's claimed injury" on grounds that the husband should have been joined as a third-party defendant pursuant to AS 09.17.080 and Alaska Civil Rules 14 and 16. The trial court denied that aspect of the motion. At trial, both Morton and her husband testified about violence in their marriage. Pouzanova argued that these incidents of domestic violence were relevant to Morton's claim for loss of enjoyment of life, and that some or all of Morton's non-economic loss was due not to the accident but to her domestic situation. On appeal, the superior court ruled that the district court had erred in "allowing plaintiff's husband to be blamed for plaintiff's injuries without him being joined as a party to the lawsuit." Pouzanova contends that the superior court misinterpreted the governing statutes; Morton appears to concede that the superior court's analysis was flawed.

Under AS 09.17.080, a jury may not allocate fault to a third party unless that third party has been joined as a defendant, with certain exceptions not relevant here.[14] "Fault" is statutorily defined to include "acts or omissions that are in any measure negligent, reckless, or intentional toward the person or property of the actor or others, or that subject a person to strict tort liability."[15] Although the definition of "fault" is thus expansive, we agree with Pouzanova that the requirement of joinder is limited to those who are arguably at fault for damages caused by the incident at issue in the action.

---

[14]    AS 09.17.080(a).

[15]    AS 09.17.900.

Subsection (a)(1) of section .080 requires the jury, "[i]n all actions involving fault of more than one person," to first find "the amount of damages each claimant would be entitled to recover if contributory fault is disregarded."[16] In other words, the jury's first task in deciding on the damages aspect of a verdict is to determine the totality of the damages suffered by the plaintiff and attributable to the incident at issue. Subsection (a)(2) requires the jury to *then* determine "the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person *responsible for the damages . . . .*"[17] The allocation of fault under subsection (a)(2) is thus for purposes of determining liability for those damages that the claimant "would be entitled to recover" under subsection (a)(1). That is, it is only fault for the incident at issue that is being allocated among potentially responsible parties. Pouzanova's challenge here was to the amount of damages Morton "would be entitled to recover" under subsection (a)(1). Pouzanova was not contending that Morton's husband was responsible for damages that Morton would otherwise be "entitled to recover" in the action; she was contending that Morton was not "entitled to recover" those damages at all, because they had not been caused by the incident that was the subject of Morton's complaint.

The only damages Morton was seeking in this action were those caused by the automobile accident, for which Pouzanova conceded liability. Under the circumstances, the district court was correct in ruling that Morton's husband did not have to be joined as a third-party defendant.

---

[16] AS 09.17.080(a)(1).

[17] AS 09.17.080(a)(2) (emphasis added).

**C.    The District Court, On Remand, Should Exclude Evidence Of The Hammer Incident Under Evidence Rule 403.**

Finally, Pouzanova takes issue with the superior court's decision that the district court erred in allowing brief testimony about an incident of domestic violence in which Morton allegedly threatened her husband with a hammer.  The superior court found no abuse of discretion in the district court's admission of other evidence of domestic violence, explaining that it was relevant to Morton's claim for damages for loss of enjoyment of life.  The superior court found, however, that evidence of the hammer incident should have been excluded for two reasons:  (1) it was not given enough context to make it relevant, and (2) it was more prejudicial than probative.   We agree.

Evidence Rule 403 provides:   "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "Evidence properly excludable as 'cumulative' falls into two categories[:] . . . evidence supporting an uncontested or established fact [and] . . . evidence repeating a point made by previous evidence."[18]  The latter category of cumulative evidence should be excluded only with caution, since it by definition concerns a disputed point, and "repetition of the same evidence on a disputed point by several witnesses is often persuasive in establishing the truth of that evidence."[19]

We do not need to decide in this case whether the general evidence of domestic violence was relevant to Morton's claim for damages for loss of enjoyment of

---

[18]    *Wasserman v. Bartholomew*, 923 P.2d 806, 813 (Alaska 1996) (citations omitted).

[19]    *Id.* n.22 (citing 6 JOHN H. WIGMORE, EVIDENCE § 1908, at 760 (Chadbourne Rev. 1976)).

life, as it is only evidence of the hammer incident that is before us on appeal.[20] Evidence of the hammer incident is problematic. First, as the superior court noted, although the defense argued that Morton's ability to wield a hammer was proof of her recovery from her accident-related injuries, the testimony about when the hammer incident occurred was too vague to allow the jury to make that connection. And even if this temporal deficiency could be cured on remand, the evidence is still more unfairly prejudicial than probative. The evidence was cumulative in both senses of the term: it was undisputed that there was domestic violence in the Mortons' marriage, and this point had already been made repeatedly in other testimony. The probative value of the hammer incident was therefore meager, while its prejudicial effect was likely high.

Morton asks us to require the exclusion of "the majority of the evidence of domestic violence and its criminal aftermath." The only evidentiary issue on appeal, however, relates to the hammer incident, and that is all we decide here.[21] But we assume that if other evidence of domestic violence is offered at trial on remand and a proper objection is made, the trial court will approach the balancing process of Evidence

---

[20]    *See Liimatta v. Vest*, 45 P.3d 310, 314 (Alaska 2004) ("[A] jury assigned the responsibility of determining the value of a loss of enjoyment of life should have had the opportunity to consider evidence that [a plaintiff's] mental and physical functions, customary activities and capacity to enjoy the pleasures of life were already restricted by a long-term addiction to drugs." (quoting *Ocasio v. Amtrak*, 690 A.2d 682, 684-85 (N.J. Super. App. Div. 1997)) (internal quotation marks omitted)). We see major distinctions between domestic violence and the drug addiction at issue in *Ocasio* but do not need to discuss them further here.

[21]    *See Schofield v. City of St. Paul*, 238 P.3d 603, 608 (Alaska 2010) (declining to review additional alleged evidentiary issues when remanding for new trial "[b]ecause it is unknown what specific evidence will be introduced on remand and what objections might be raised").

Rule 403 with care, particularly in light of its earlier determination that the evidence has only "minimal relevance."

## V.     CONCLUSION

We REVERSE the superior court's decision on appeal on the issues of punitive damages and the allocation of fault.  We AFFIRM the superior court's decision on appeal on the admissibility of evidence of the hammer incident and REMAND to the district court for a new trial in conformance with this opinion.[22]

---

[22]     Because we are reversing on evidentiary grounds, we do not reach the issue whether the district court erred when it failed to grant Morton's challenges for cause  of three jurors, who Morton argues were not properly rehabilitated after expressing skepticism about claims like Morton's.  We do note the requirement of our prior cases that the rehabilitation of a juror who is challenged for cause must include an *individual* examination as to whether the juror "will be fair, impartial and follow instructions." *See Joseph v. State*, 26 P.3d 459, 463 (Alaska 2001) (holding that Alaska Civil Rule 47(c) "implicitly requires the court to examine a prospective juror individually before deciding whether to grant a challenge [for cause]"); *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988) ("All that is required of a prospective juror is a good faith statement that he or she will be fair, impartial and follow instructions.").